ELIZABETH B. QUIGLEY, Administratrix of Estate of JAMES H. QUIGLEY, Appellant, v. WALKER D. HINES, Director General of Railroads in Charge of and Operating ST. LOUIS MERCHANTS BRIDGE TERMINAL RAILWAY COMPANY and TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS.

Division One, December 19, 1921.

1. **NEGLIGENCE: Irregular Train: Pedestrian: Experienced Engineer: Assumption of Risk.** Plaintiff's husband had been in railroad service for thirty-two years, and had served as an engineer on defendant railroads for twenty-five years. On the day of his injury he had been at work on the Illinois side of the Mississippi, but his home was in St. Louis. To carry such workmen to their homes at the end of the day's work, the railroads ran a cab train, consisting of an engine and one car. West of the west end of the bridge were double tracks, with sufficient space between them to permit persons to walk therein with safety, and it had been so used that it was the defendant's duty to expect pedestrians therein. In crossing the bridge the cab train used the west-bound track, but at the west end a long freight train occupied that track, and the cab train was deflected to the south or east-bound track. Plaintiff's husband was walking west in the space between the two tracks, and when the cab train was about two hundred feet from him the bell was rung and the signal sounded, and in response he gave a signal to "come on, everything is clear," and the engineer

saw and understood his signal, and the train proceeded at a speed of seven or eight miles per hour. Suddenly when the train was about to pass him, he left the path in which he was walking, stepped in front of the train and was immediately struck, and there is no evidence that his danger, after he started to go upon the track, was or could have been seen in time to save him. *Held*, that, under the Federal rule, he assumed the risk, and plaintiff cannot recover.

2. ———: **Irregular Train: Ipso Facto Negligent.** The mere fact that a west-bound train is running on the east-bound track, contrary to the usual custom, is not of itself evidence of negligence. The question still remains whether its crew, in all the circumstances, used due care.

3. ———: ———: **Negligent Handling of Train: Warning.** Where the west-bound train was on the east-bound track, was running at a speed of seven or eight miles an hour, a pedestrian was seen walking in the space between the tracks one or two hundred feet ahead, the bell was rung and the whistle sounded, he observed the warning and signaled the engineer to 'come on, everything is clear,'' the engineer saw his signal and proceeded at the same speed, he suddenly left the place of safety and stepped upon the track in front of the on-coming train, it being then too late to stop it, the crew were not negligent in handling the train.

4. ———: ———: **Ordinary Care.** The rule that the crew of a west-bound train on an east-bound track should have checked or stopped its speed in time by the exercise of ordinary care to have avoided injuring a pedestrian walking in a place of safety between the tracks does not mean that the train must have been under such control that it could not have passed him at all.

5. ———: ———: **Danger Signals: Others: Knowledge.** Where it was customary for a cab west-bound train to run on an east-bound track when a freight train occupied the west-bound track, and a pedestrian knew that fact, and warning by ringing the bell and sounding the whistle was given, which he observed and understood, it was not necessary for the railroad company to prescribe rules calling for signals other than danger signals.

6. ———: ———: **Assumption of Risks: Federal Rule.** Under the Federal rule the servant assumes extraordinary risks incident to his employment or risks caused by his master's negligence which are obvious or fully known and appreciated by him. So that, even if it be assumed that it was the duty of defendant railroad company to prescribe rules requiring definite signals, other than danger signals, to be given to apprise its employees using its tracks

that an on-coming train was running irregularly, a pedestrian, walking in a place of safety between the tracks, who had had twenty-five years experience as an engineer in defendant's employment, and knew that there were no such rules and that the train which struck him when he suddenly stepped upon the track in front of it was running irregularly, and observed and understood the danger signals given, assumed the risk of his consequent injuries.

Appeal from St. Louis City Circuit Court.—*Hon. Granville Hogan*, Judge.

AFFIRMED.

*W. H. Douglass* for appellant.

(1) The deceased was engaged in interstate commerce at the time he sustained the injuries. (a) In doing repair work on tracks of an interstate railroad the employees engaged in this work are employed in interstate commerce. Pederson v. Railroad, 229 U. S. 146; Southern R. R. v. Accident Comm., 251 U. S. 263; 1 Roberts' Federal Liability of Carriers, secs. 468, 469, 481, 482, 473, 474; Southern Railroad v. McGuin, 240 Fed. 649. (b) The deceased at the time he sustained the injury was on his way home and still on the premises of the defendant, and while returning to and from his work was still employed in interstate commerce. 1 Roberts' Federal Liability of Carriers, sec. 556, p. 784; Erie Railroad Co. v. Winfield, 244 U. S. 173; North Carolina Railroad v. Tachary, 232 U. S. 260; Williams v. Scharff, 222 S. W. (Mo.) 412. (2) It was the duty of the defendant to anticipate the presence of deceased walking between these tracks and in a position of danger, as the testimony shows that employees usually and frequently walked along this approach on their way to and from their work. Dunn v. Railroad Co., 192 Mo. App. 268; Justus v. Railroad, 224 S. W. 83; Thorp v. Wabash Ry. Co., 206 S. W. 403; L. & N. Railroad Co. v. Eversolle, 178 Ky. 67, L. R. A. 1918B, 211; Stark v. Lusk, 194 Mo. App. 250; Gray v. Wabash Railroad, 198 S. W. 1137;

4 Thompson on Negligence, sec. 4456; Feldman v. Railroad, 175 Mo. App. 629. (3) The deceased, in walking between the tracks on the approach, was in a position where a step to the side would place him in a position where he would be struck by a passing train, and he was therefore in a position of danger in walking between these tracks on the approach. Dunn v. Railroad Co., 192 Mo. App. 268; Southern Railroad Co. v. McGuin, 240 Fed. 651; Barry v. Railroad, 98 Mo. 62. (4) It was the duty of defendant to adopt some reasonably safe system of signals or method of signaling employees walking between the tracks of the approach of a train being run on the wrong track, that is, irregularly, as an employee walking between these tracks was in a position of danger. Southern Railroad Co. v. McGuin, 240 Fed. 651; Reagan v. Railroad, 93 Mo. 352; Gaska v. Car Co., 127 Mo. App. 180. (5) Deceased, in walking between the tracks on the approach, was in a position of peril, especially in view of the fact that a westbound train was approaching on the eastbound track, as a single step to the side would place him in a position to be struck by the train and it was the duty of the defendant's employees in charge of the train to keep it under control, run it at such a rate of speed and stop it or give a warning of its approach on the wrong track in time to avoid injury to deceased. Gray v. Wabash Railroad Co., 198 S. W. 1137; Southern Railroad Co. v. McGuin, 240 Fed. 649. (6) Even though deceased may have been guilty of negligence this would not defeat plaintiff's right to recover under the Federal Employers Liability Act if the defendant was guilty of any negligence which in any degree contributed to the injury. Brightwell v. Lusk, 194 Mo. App. 647; Penn. Co. v. Cole, 214 Fed. 948; Sec. 3, Chap. 149, 35 U. S. Statutes at Large, p. 66; Southern Railroad Co. v. McGuin, 240 Fed. 652. (7) If from all the facts in this case an inference of negligence is permissible, then, it is a case for the jury. Myers v. Coal Co., 233 U. S. 192; Jones v. Railroad Co., 178 Mo. 543; Settle v. Railroad, 127 Mo. 341; Leeright v. Ahrens, 60 Mo. App. 178; Middleton v.

L. H. & P. Co., 196 Mo. App. 263. (8) Deceased was not guilty of assumption of risk. (a) Either under the common-law assumption of risk as interpreted by our State courts. Williams v. Pryor, 272 Mo. 613; Fisk v. Railroad, 263 Mo. 106. (b) Or under the common-law assumption of risk as interpreted by the Federal courts. Texas & Pac. Ry. Co. v. Swearingen, 196 U. S. 51; Railroad v. McDade, 191 U. S. 64; Railroad Co. v. Hall, 232 U. S. 101; Yazoo Railroad Co. v. Wright, 235 U. S. 376; Chesapeake & Ohio v. Proffitt, 241 U. S. 468; Chesapeake & Ohio v. DeAtley, 241 U. S. 315; Erie Railroad Co. v. Purucker, 244 U. S. 320; Southern Railroad Co. v. Mc-Guin, 240 Fed. 649. (9) Whether or not deceased was guilty of assumption of risk is a question for the jury. Erie Ry. Co. v. Purucker, 244 U. S. 320; Southern Railroad Co. v. McGuin, 240 Fed. 649, 652.

*J. L. Howell* and *W. M. Hezel* for respondents.

The instruction requested by the defendants, and given by the court, in the nature of a demurrer to the evidence, was properly given. (1) Because the deceased had heard the danger signals and had given the railroad sign "come on" while he was in a place of safety, and for the reason that there was nothing to suggest to the engineer that Quigley did not know the train was on the eastbound track. Southern Railroad Co. v. McGuin, 240 Fed. 649; Railroad Co. v. Eversole, 198 S. W. 548; Erie Railroad Co. v. Purucher, 244 U. S. 320; Dunn v. Railway Co., 192 Mo. App. 260. (2) Because under the circumstances there was no duty on the part of the engineer to stop his train until Quigley left the place of safety and put himself in peril; and there is no testimony that the engineer could have stopped the train in time to have avoided injuring him after he put himself in peril. Baecher v. Railroad, 240 Mo. 519; Steele v. Railroad, 265 Mo. 97. (3) Because the deceased assumed the risk, if any, created by the failure of the defendants to establish signals calculated to specifically warn of the irregular running of trains, even though it

be held that failure to provide such signals was negligence. Boldt v. Railroad, 245 U. S. 442.

JAMES T. BLAIR, J.—This is an action for damages for the death of James H. Quigley, who was struck and killed by a train operated by employees of respondent. At the close of appellant's evidence the trial court's rulings resulted in an involuntary nonsuit. The motion to set aside was overruled, and judgment entered accordingly. This appeal followed.

The railroad upon which Quigley was killed crossed the Mississippi River at St. Louis on the Merchants Bridge. There were two tracks. There were two approaches to the bridge from the west. One of these led to the northwest, and is called the Carrie Avenue approach. The other led west and then curved to the south, and is called the Bremen Avenue approach. This approach carried two tracks and upon it the accident occurred. From the west end of the bridge the Bremen Avenue approach consisted, for some distance, of trestle work. The fill upon which the tracks continued from the end of this trestle was about thirty feet high where it joined the trestle. The grade descended thence toward Bremen Avenue. The top of this fill was broad. It carried two tracks. There was a space between these tracks which, the witnesses say and the photographs introduced by appellant show, was ample to permit a pedestrain to walk with safety between them when both tracks were occupied by moving trains. The evidence tended to show that employees of respondent had so used this approach in going to and from their work that it was respondent's duty to expect them upon it. Quigley had been in railroad service for thirty-two years, and had served as a railroad engineer on the roads in question for twenty-five years. On the day he was killed he had been at work on the Illinois side. His day's work done, he was on his way to his home in St. Louis. The train which struck him consisted of an engine and one car. Its function was to take employees to their work and,

after that work was done, to their home side of the river.
It was called the cab train.  On this occasion it came
from the Illinois side to the Missouri side.   When it
reached the bridge it was found that the north, or west-
bound, track was occupied by a long freight train.  The
crew of the cab train were directed to proceed with their
train across the bridge on the south, or east-bound track.
This they did.  The train reached the west end of the
bridge.   In doing so it passed the long freight train
which occupied the north track.  It then proceeded to the
junction of the Carrie Avenue and Bremen Avenue ap-
proach.  The testimony is that Quigley was at this point
when the cab train was there.  He proceeded down the ap-
proach, between the tracks.   Subsequently the cab
train started down the Bremen Avenue approach, still
on the southern or southeasterly track.  The only cross-
over by which it might pass to the right-hand track was
near Bremen Avenue and somewhat beyond the point at
which Quigley was struck.  Quigley had reached a point
several hundred feet ahead of the train before it left the
Carrie Avenue junction point.  After leaving this point
the train attained a speed of about twenty-five miles per
hour.   The tracks leave the bridge in a westerly di-
rection and curve to the south.  There is a steady curve,
which reaches its sharpest state at a point somewhat
southwest of the place of injury.  The employees opera-
ting the engine of the cab train, when about two hundred
feet from Quigley, observed him.  The bell had been
ringing and continued to ring.  The engineer had com-
menced to slow down for the Bremen Avenue stop.  When
he saw Quigley at the distance stated he began to give
the danger signal.  This was given until Quigley partly
turned and looked toward the on-coming train and sig-
naled to the engineer, to "Come on.  Everything is all
right. Everything is clear."  The train's speed was still
being gradually reduced for the contemplated stop, and
had been cut down seven or eight miles per hour when the
train reached a point a few feet behind Quigley.  Sud-
denly, and when the train was about to pass him, Quigley

left the path in which he was walking and stepped upon the track in front of the train and was immediately struck. There is no evidence that his danger, after he started to go upon the track, was, or could have been, seen in time to save him. The testimony was direct that Quigley was walking in such a place between the tracks that no danger to him was suggested to the train crew, and that he would have been in no danger if he had not suddenly stepped aside from that place and put himself in front of the train. The testimony is that, while the other track was the one generally used for trains going in the direction in which the train which struck Quigley was moving and while it was known as the "regular east-bound track," yet there was nothing unusual in the use of the "regular east-bound track" for west-bound trains; that it was customary so to use it when the regular west-bound track was occupied by another train (as in this case) or it was under repair or obstructed or not available for any reason; that it was customarily so used under such conditions; that it occurred frequently, and any railroad men who had been in the service "for any length of time" knew that was the manner of operation.

I.   For the purpose of this appeal respondent concedes that Quigley was walking along the approach at a place where employees frequently walked and should have been expected to have been found; that Quigley was then in respondent's service and that both **Contributory Negligence.** were at the time engaged in interstate commerce; that while Quigley was walking in a safe place, yet there might be danger by reason of his stepping aside from a train approaching from the rear on an irregular run, and that these facts are to be considered in determining whether the care used by respondent's employees was due care, in the circumstances; and that these concessions put the question of contributory negligence out of the case in so far as concerns the issues in this court.

II.  The mere fact that the cab train was running west on the east-bound track is not, of itself, evidence of negligence. [Southern Ry. v. McGuin, 240 Fed. l. c. 651; Imler v. N. P. Ry. Co., 89 Wash. 527, L. R. A. 1916D, 702.]  The question remains, whether, in all the circumstances, including the fact mentioned, the crew used due care.  Quigley was in a place which was safe enough had he continued there.  Let it be assumed he was so near the track that a duty to warn him arose.  That duty was performed.  The bell was rung continuously.  When it was not seen that he heeded this signal and while the train was yet one hundred and fifty or two hundred feet away, the engineer began giving the danger signal.  Quigley heard this and understood its import.  He turned toward the on-coming engine and waved to the engineer to "come on; everything is all right; everything is clear."  When this signal of Quigley was seen and understood, the engineer proceeded.  The train was gradually slowing down for the stop at Bremen Avenue.  When the engine was within a few feet of Quigley he suddenly stepped in front of it.  It was too late to save him.  This is appellant's evidence.  It is suggested that the train should have been kept under control, and "under control" is defined as "under such control that respondent's employees could have checked it or stopped its speed in time by the exercise of ordinary care to have avoided injury to deceased."  If this rule, as defined, applied to this situation, the cab train could not have passed Quigley at all.  The engineer had proceeded upon the theory that Quigley was entitled to notice of his approach.  He had notified him.  He had seen Quigley look back and signal the train to come on; that everything was clear.  In so far as the mere handling of the train at the time is concerned, that was a signal which entitled the engineer to proceed and to pass Quigley.  The rate of speed is neither alleged nor shown to have been negligent.  No confusing signals were given.  In the circumstances it does not appear that the train was negligently handled.

Appellant relies upon the McGuin Case.  The facts

*Due Care.* [margin note]

of that case were not like those in this case. McGuin was walking between double tracks. A train approached him from the rear. The testimony which was held to entitle the plaintiff to go to the jury was that of Miller, who said that no signal at all was given until McGuin started to cross the track in front of the on-coming train; that the danger signal was then sounded, but it was too late. The train was on the irregular track. The testimony of other witnesses makes a case something like that here. Their testimony, it is clearly indicated by the court, would not have justified a finding for McGuin. In fact, it is the difference between Miller's testimony and testimony almost like that in this case which is made the foundation of the ruling that a finding of liability could be sustained.

Appellant also relies upon L. & N. Railroad Co. v. Asher's Admr., 178 Ky. 67. In that case a section hand was aiding in clearing away earth which had slid down near, and to some extent upon, the south-bound track of the railroad. This was near a sharp curve. Deceased was sent north to get a plank. On his return he walked down the north-bound track. Half an hour prior thereto a south-bound train had used the south-bound track under slow orders and proceeded on its way. No notice of an intention to route south-bound trains over the north-bound track was given; no south-bound train previously had used the north-bound track. As deceased neared the working place a passenger train running south at the rate of forty-five miles an hour came suddenly around a sharp curve and along the north-bound track on which deceased was walking and struck him. No warning was given by the train before Asher was seen by the crew, and it was then too late. The case is quite unlike this case.

III. It is contended respondent should have prescribed rules which would have called for signals, other

Additional
Rules.

than danger signals, to notify employees using the approach that a train was running irregularly.

1.  Appellant proved that Quigley knew that it was customary for trains to run irregularly in circumstances like those existing at the time, i. e. when a slower train occupied the regular track. It is also clear he heard the signals given, saw the train and signaled it to come on. It is difficult to see what more information would have been given him if signals other than those given had been used.

2.  The Federal rule concerning assumption of risk applies in this case. [Pryor v. Williams, 254 U. S. 43.] For present purposes let it be assumed that it was the duty of respondent to prescribe rules requiring definite signals, other than danger signals, to be given to apprise employees using the approach that a train was running irregularly.  There were no such rules.  Quigley had been in service on these railroads for thirty-two years— twenty-five years as an engineer. It is beyond doubt that he knew there were no such rules and that he knew trains were run irregularly in various circumstances and in the very circumstances which existed at the time; for appellant argues he crossed the river on the freight train which then occupied the west-bound track on the bridge. There could be no doubt in the case about Quigley's appreciation of the danger if he knew the facts just stated as known to him.  Under the Federal rule it "is settled that the servant assumes extraordinary risks incident to his employment or risks caused by his master's negligence which are obvious or fully known and appreciated by him" (citing authorities). [Boldt v. Penn. R. R. Co., 245 U. S. l. c. 445.] The trial court was right in ruling that appellant's evidence showed she had no cause of action.

The judgment is affirmed.  All concur.