MARY HOCH, Administratrix of Estate of OSCAR HOCH, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

Division One, November 15, 1926.

1. **INTERSTATE COMMERCE: Car Inspector.** A railroad employee at work in repairing and inspecting cars on a switch track being used in assembling cars to be moved to the yards of another carrier in another state, and the railroad company assembling the cars on such track, are both engaged in interstate commerce.

2. **ASSUMPTION OF RISK: Federal Act: Obvious Negligence and Risk.** In an action brought under and based upon the Federal Employers' Liability Act, for damages for the negligent killing of a car inspector engaged in interstate commerce, the defense of assumption of risk is a bar to the action even though the interstate carrier be negligent, if it appears that the negligence and the risk arising from the negligence of the carrier were so obvious that an ordinarily prudent person, under the circumstances in evidence, would have observed and appreciated them, unless it further appears that the carrier has violated a Federal statute for the safety of the employee and such violation contributed to his injury. Such being the Federal rule it must prevail over a different state rule or law in an action falling within the purview of the Federal Act.

**3. ASSUMPTION OF RISK: Injury to Inspector of Interstate Cars: Obvious Negligence and Risk: No Warning from Switching Engine.** Deceased was an experienced inspector and repairer of cars and had been employed in the switch yard for many years before his fatal injury; during the several years of his employment it had never been the practice or custom of switching crews to warn him or other employees engaged in like duties, by bell, whistle or otherwise, of the kicking or shunting of cars on to the several switch tracks, or to keep a lookout for inspectors or repairers, or to give them notice of the movement of cars, unless they were actually seen by some member of the switching crew in a place of peril, but on the contrary it was the practice and custom for switching crews to rely upon deceased and others engaged in like work to protect themselves from injury and to guard their own safety, either by placing a blue flag upon the train, or by their sense of observation; and deceased placed no blue flag, there was no evidence that he was seen by any member of the crew at any time during the day of his fatal injury, and his body was found lying beside a switch track upon which three interstate cars had been kicked or shunted. **Held,** guided by the Federal rule, that the risk (even though it may have been occasioned by the negligence of defendant) arising from the failure of the switching crew to warn him of the movement of cars, was obvious to deceased and must have been, with his many years of experience, fully known and appreciated by him, and he must be held to have assumed the risk as a matter of law, and his administratrix cannot recover, and the trial court should have given a peremptory instruction in the nature of a demurrer to her case.

**4. ————: Rule Requiring Ringing of Bell: Customarily Disregarded.** The failure of the switching crew to observe a rule of defendant that "the bell must be rung when the engine is about to move" is only negligence; and where the car repairer knew that the rule had been uniformly disregarded for years, he assumed the risk arising from such obvious negligence when he placed himself upon a switch track where he was likely to be struck by cars run in on the track by an engine whose bell was not rung.

Corpus Juris-Cyc. References: Commerce, 12 C. J., Section 55, p. 45, n. 22. Master and Servant, 39 C. J., Section 893, p. 690, n. 75, 82, 83; Section 903, p. 700, n. 74; Section 934, p. 733, n. 10; p. 734, n. 13, 14; Section 948, p. 746, n. 26; Section 1291, p. 1099, n. 73.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Grover, Tipton & Graves* for appellant.

(1) The evidence in this case shows that the train crew knew that there were stationary cars ahead at the time when they shunted the last two cars down track number 35. The train crew also knew that the deceased's very duty required him to be around and between the cars of the yard. The instruction tells the jury "that there is no evidence that any employee of the defendant at the time or prior to the injury of Oscar Hoch, referred to in the evidence, knew that he was in a position of peril." (a) This is error for it excludes any constructive knowledge that the deceased was in a position of peril. (b) It is a comment upon the evidence and is, therefore,

erroneous. Young v. Lusk, 268 Mo. 625; Williams v. Wabash, 175 S. W. 903; Kame v. Railroad, 254 Mo. 175; Keppler v. Wells, 238 S. W. 428. (2) The second instruction tells the jury that the defendant owed him no duty unless actually seen in a position of peril. These two instructions are the same as a peremptory instruction for the defendant. (3) Instruction D-3 in effect tells the jury there is no evidence of any rule, practice or custom to warn the employee that the engine and cars were being moved in the yards. This instruction is erroneous for the reason that regardless of rule, practice or custom, if said rule, practice or custom is negligent, then the master cannot relieve himself of said liability by hiding behind said rule, practice or custom. Tetweiler v. Railroad, 242 Mo. 187. (a) This instruction is further erroneous for the reason there is evidence of Rule 30, which requires a bell to be rung as the engine was about to move. (b) It is erroneous because it directs a verdict and fails to include every issue in the case. It ignores the proposition that the deceased was in a position of peril and that the same was known to the defendant, or should have been known to the defendant. Cassin v. Lusk, 210 S. W. 902; Daniel v. Pryor, 227 S. W. 102; State v. Slusher, 256 S. W. 817.

*E. T. Miller, Henry S. Conrad, L. E. Durham* and *Hale Houts* for respondent.

The judgment should be affirmed because plaintiff failed to make a case. Quinn v. Railroad, 218 Mo. 545. (1) Failure of deceased to put out a blue flag was the sole proximate cause of his injury and death. Francis v. Railroad, 110 Mo. 395; Yoakum v. Lusk, 223 S. W. 53; Flack v. Railroad, 285 Mo. 49; Great Northern Ry. v. Wiles, 240 U. S. 44; State ex rel. v. Ellison, 271 Mo. 472; Matthews v. Railway, 227 Mo. 205; Central Ry. Co. v. Young, 200 Fed. 359; Ry. v. Conway, 98 S. W. (Tex.) 1072; Davis v. Kennedy, 266 U. S. 147; Car Co. v. Mill Co., 285 Mo. 695; Arnovitz v. Arley, 219 S. W. 622. (2) There was no evidence that deceased's injury was caused by acts of negligence charged by the petition. It was a matter of speculation as to what he was doing and what caused his injury. Swearingen v. Railroad, 221 Mo. 659; State ex rel. v. Cox, 298 Mo. 432; Yarnell v. Railway, 113 Mo. 579; Bank v. Simpson, 152 Mo. 656; State ex rel. v. Ellison, 271 Mo. 468; Rashall v. Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257; Rittenhouse v. Frisco, 252 S. W. 945; Aerkfetz v. Humphrey, 145 U. S. 418. (3) In any event, deceased assumed the risk. Quigley v. Railroad, 291 Mo. 33; Boldt v. Railroad, 245 U. S. 441; Southern Pacific v. Berkshire, 254 U. S. 415; Gilmer v. Railroad, 4 Fed. (2nd) 964.

SEDDON, C.—Action by Mary Hoch, widow of Oscar Hoch, as administratrix of her deceased husband's estate, to recover damages for his death, which she claims to have been caused by defendant's negligence. The action is brought under the Federal Employers' Liability Act of April 22, 1908 (U. S. Comp. Stat., secs. 8657-8665), and plaintiff seeks to recover damages in the sum of $15,624.91. The amended petition, upon which the action was tried below, alleges:

"That on or about the 6th day of March, 1922, Oscar Hoch was in the employ of defendant as air inspector; particularly inspecting and repairing Federal appliances on freight cars in defendant's switch yards in Kansas City, Missouri;

"That on said date, said deceased while performing his duties as such employee of defendant, was inspecting cars on switch-tracks in Kansas City yards in West Bottoms; that while deceased was thus engaged, attending to the discharge of his said duties on Track No. 35, the defendant, its agents, servants, and employees, carelessly and negligently caused a car, or cars, to be shunted against the string of cars on or among which deceased was working, thereby causing him to be crushed and injured, so seriously as to cause his death on the 9th day of March, 1922.

"That the aforesaid injuries to deceased were caused by the negligence and carelessness of the defendant, its agents, servants and employees, to-wit:

"That deceased was working on or among a string of cars on Track No. 35, in said switch yards, and that the defendant, its agents, servants and employees ran a car or cars on switch Track No. 35, and against the cars that deceased was working on or among without any warning to deceased when the defendant, its agents, servants and employees knew, or by the exercise of ordinary care might have known, that the deceased was working on said track and in a position of peril and danger while discharging his said duties as an employee of the defendant by reason of switching and running of said car or cars on said track;

"That deceased was inspecting said cars on defendant's Track No. 35, in said switch yards, and that he was oblivious of danger, and the defendant, its servants, agents and employees, operating said switch engine and cars saw, or could have seen and observed, deceased's position of peril and his obliviousness thereto, in time to have exercised ordinary care by ringing the bell, sounding the whistle, or to have stopped the cars moving on said track, or to have kept said car or cars off of said track, or to have warned deceased of the movement of said car or cars on said track, and thus prevented striking and injuring plaintiff, which they failed to do, but that said defendant, its agents, servants, and employees carelessly and

negligently failed to exercise ordinary care to prevent injuring deceased after such discovery, or by the exercise of ordinary care to have discovered the position of peril in which deceased was, and by reason thereof deceased received the aforesaid injuries.''

The answer is a general denial, coupled with pleas of assumed risk and contributory negligence on the part of deceased. The answer furthermore pleads that, at all times mentioned in the petition, there was in full force and effect in defendant's railroad yard at Kansas City, Missouri, a certain rule referred to in the record as the ''blueflag rule,'' and charges ''that deceased had full knowledge of said rule at the time and place mentioned in plaintiff's petition; that if deceased was in a position in which he could not look out for movements of cars and trains and was in peril of being injured by movements of cars and trains upon the track mentioned in plaintiff's petition at the time and place mentioned in plaintiff's petition, it was the duty of deceased to place on the track or upon the car mentioned in plaintiff's petition a blue flag; that no blue flag was so placed by deceased at the time and place mentioned in plaintiff's petition; that if deceased was injured by reason of the movement of cars while in a position in which he could not observe the movements of cars and trains, and was in peril of being injured by movement of cars and trains upon said track, his injuries were caused solely by his failure to put out a blue flag as provided in said Rule 26.''

The reply is a general denial and, by way of further reply, plaintiff ''states that if defendant had a rule known and numbered as Rule 26, requiring that a blue flag should be placed on the track or at the end of a car upon which workmen were engaged, and that by the terms of said rule employees should not work at such places unless blue flags were so placed by them, then plaintiff further states that at the time and long prior to the injury to deceased mentioned in plaintiff's petition, said blue-flag rule was non-observed and nonenforced by the defendant in said yards, and that the switching in said yards at the time of and long prior to deceased's injuries was carried on without the use of blue flags by deceased and other workmen, and the fact that said blue-flag rule was non-observed and non-enforced in said yards was at the time of deceased's injuries and long prior thereto known to the defendant or by the exercise of ordinary care might have been so known to defendant; and plaintiff denies that it was deceased's duty to see that said blue flag was placed at or on or in front of the cars in question before going upon said track or working in connection with said cars, as alleged in defendant's answer.''

Deceased was fifty-six years of age at his death and had been in defendant's employ for about twenty-five years. On and for several years prior to March 6, 1922, the date of his injury, deceased had been

employed in defendant's Nineteenth Street, or West Bottom, railroad yard in Kansas City, Missouri, as a car inspector and light-repair man. His duties consisted of the inspection of the air equipment and safety appliances on freight cars in defendant's railroad yard and the making of minor, or light, repairs, such as coupling the air-hose, putting in new gaskets, tightening bolts and nuts, putting on new brake shoes and replacing grab irons. In the performance of the aforesaid duties it was necessary for deceased to go between the cars and to work about them. The evidence of plaintiff tends to show that the accomplishment of certain of the duties aforesaid required but a brief period of time, as, for instance, the mere coupling of an air-hose could ordinarily be accomplished in some four or five seconds of time.

The West Bottom yard of defendant in Kansas City, Missouri, consists of some twenty-five or more parallel switch-tracks extending north and south, with a lead track at the south end of the yard leading onto the several switch-tracks. The railroad yard is approximately one-fourth mile in length, north and south, and several hundred feet in width, east and west. Deceased had been assigned a certain territory or portion of said yard in which to perform his duties, the territory assigned to deceased consisting of switch-tracks numbered 25 to 41, inclusive, some sixteen tracks, together with the spaces intervening between the several tracks. According to the testimony of defendant's assistant car-foreman, Spangler, who testified as a witness for plaintiff, deceased "had his regular assigned territory or a portion of the yard to perform his duties in, and he did not have to report to me before he proceeded to his regular assigned duties; his duties were to take care of that operation yard, and he took care of the movements of equipment as required." Deceased apparently performed his duties without the assistance of a helper; in other words, the testimony tends to show that he worked alone. Deceased worked on an eight-hour shift from eight o'clock in the morning until four o'clock in the afternoon, seven days a week.

On the morning of deceased's injury, March 6, 1922, one of defendant's switching crews was assembling cars on track numbered 35 in said yard in Kansas City, Missouri, to be moved later to the freight yard or terminal of another railroad in the State of Kansas. Before the moving of the cars assembled on track 35, it was deceased's duty to couple the air-hose of the several cars and to ascertain if the air equipment and safety appliances upon such cars were defective and, if defective, to repair the same before permitting the assembled cars to leave defendant's yard. According to plaintiff's evidence, some eight or ten cars were standing upon track 35 on the morning of deceased's injury. The switching crew was engaged in assembling cars on track 35 from the lead track at the south end

of the yard with the use of a switching-engine. The switching-engine, according to plaintiff's witness Ryan, who was one of defendant's switching crew, "picked up one car off track 29 and kicked it onto track 35, went in on track 38 and got three more cars and kicked two of them to track 35, and then went over to another part of the yard." Shortly after this last switching operation, which occurred between 8:30 and nine o'clock in the morning, deceased was found lying between tracks 35 and 36 with both legs crushed and suffering other fatal injuries. The three cars which had been last kicked or shunted onto track 35 were standing near the point or place where deceased was found, two of said cars standing north of the point where deceased was found, the deceased having been found lying near the south end of the third or last car which had been shunted onto the track. One or two tools, a hammer or wrench, or both, were found lying in the middle of track 35 near the point where deceased was found. One of plaintiff's witnesses testified: "Around track 35 there were a few specks of blood and just a little, small piece of cloth, looked like overalls, threads like this overall cloth." There was no other circumstance or evidence adduced by plaintiff as to what deceased had been doing prior to his injury. Nor was there any positive or direct evidence tending to show by which particular car deceased was injured. Deceased was removed to a hospital, where he died as a result of his injuries on March 9, 1922.

Plaintiff's evidence tended to show that, at the time the three cars were kicked or shunted onto track 35, no warning of any kind was given to deceased of such switching movement; that the engine bell was not rung or the whistle sounded, either before or during the switching movement; that the several members of defendant's switching crew knew that the duties of deceased required him to be about and between the cars in defendant's railroad yard; and that the members of the switching crew had frequently seen deceased working between and about the cars in the railroad yard during the several years of his employment preceding his injury. There is no evidence on plaintiff's behalf that deceased was actually seen by any member of the switching crew, or by any other employee of defendant, upon the morning of his injury, until he was found lying between tracks 35 and 36, after he had suffered his fatal injury. The several members of the switching crew testified positively that they did not see deceased at any time on the morning in question until after he had been injured. One of defendant's witnesses testified, on cross-examination by plaintiff, that there was in force at the time of deceased's injury a certain rule of defendant, known as Rule 30, which provides: "The engine bell must be rung when an engine is about to move."

Plaintiff's witness, Ryan, who was a member of defendant's switching crew, testified upon cross-examination that, during the several years he had worked as a switchman in defendant's railroad yard, there had never been a practice or custom to sound the engine whistle or ring the engine bell when shunting or kicking cars onto the switch-tracks in said yard. Plaintiff adduced no testimony tending to show that it had been the practice or custom of defendant's switching crews to sound a warning by either bell or whistle while performing switching operations in the yard. A number of defendant's witnesses testified that there was no practice or custom of blowing a whistle or ringing a bell when switching or kicking cars onto the tracks in defendant's railroad yard. Plaintiff's witness, Spangler, an employee of defendant, testified that there were some eighteen or twenty engines switching, and approximately 2,000 cars moving, in the yard during a period of twenty-four hours; that, if a signal were given every time a car was moved, "there would be as many whistles and bells going on as there was cars moving, and there is hundreds of cars moving;" that it was his opinion, based upon several years of experience in the yard, that it would be highly impractical to blow a whistle or ring a bell every time there is a car movement; that frequently there were as many as three or four cars moving at the same time off the lead track onto the several switch-tracks; that a switching-engine, while operating in the yard, may be moving a string of from one to fifty cars; and that it is possible to use seven or eight engines upon the lead track, if conditions require it, but ordinarily there are not more than two engines handling cars upon the lead track. It also appears from defendant's evidence that the engineers and firemen upon the switching-engines had no knowledge of the particular switch-tracks to which cars were kicked or shunted from the lead track, for the reason that the engine-men merely followed the signals of the switch-men as to the movements of the engines, the cars being cut out and the switches being thrown by the switch-men themselves, who selected the particular switch-tracks upon which the cars were kicked or shunted.

Defendant introduced in evidence a copy of its rule, referred to as the "blue-flag rule," which rule is as follows:

### "BLUE-FLAG RULE.

"A BLUE flag by day and BLUE light by night placed on a track or at the end of car, engine or train, denotes that workmen are at work under or about the car, engine or train, and employees must not work at such places unless such BLUE signal is so placed. A car, engine or train thus protected must not be coupled to or moved until BLUE signal is removed by the person who placed it.

"When a car, engine or train is protected by BLUE signal other cars must not be so placed in front of it as to obscure the BLUE signal without first notifying the workmen, that they may protect themselves.

"I have carefully read the above BLUE-flag rule, and I hereby acknowledge that I realize and understand failure to use the Blue Flag is violation of instructions and that I am subject to dismissal if I fail to comply with instructions.

"(Signed) OSCAR HOCH,
"Employee
"K. C., Mo. at
"Occupation & Station
"Light Repairing
"Date
"No. 1-19-19."

Deceased's handwriting and signature thereto were identified by plaintiff. Defendant also introduced in evidence certain records of defendant showing that, on August 24, 1915, deceased had been suspended by defendant for three days for non-observance of the "blue-flag rule" in failing to place or put out a blue flag while making repairs under a caboose car.

Plaintiff, apparently for the purpose of showing a non-observance of the "blue-flag rule" and a waiver thereof by defendant, introduced evidence to the effect that deceased, and other inspectors and repairmen performing like duties, had not ordinarily placed or put out blue flags while working between and about the cars in defendant's yard; that it was not the custom in the defendant's railroad yard to place a blue flag in the performance of light repairs, and that deceased had never been seen to put out a blue flag in the perfomance of his duties. Defendant, on the other hand, introduced testimony tending to show that the "blue-flag rule" was in force and effect in the railroad yard at the time and long prior to deceased's injury; that the blue flag was placed frequently by inspectors and repairmen, while working in the yard, and had been placed by deceased at times prior to his injury; that the failure of an inspector or repairman to place a blue flag was at his own risk and upon his own initiative; that the blue flag was the only protection to repairmen which the switching crews recognized; and that the blue flag, when placed in accordance with the rule, was always respected and recognized by switchmen and trainmen while switching in the yard.

Defendant, at the close of plaintiff's case in chief and again at the close of all the evidence, requested the giving of peremptory instructions in the nature of demurrers to the evidence, which peremptory instructions were refused by the trial court and exceptions to the trial court's rulings were duly taken and saved by defendant. The case was thereafter submitted to the jury upon certain instructions given

on behalf and at the request of the respective parties. Nine of the jurors returned a verdict finding the issues for defendant and judgment was entered accordingly. After unsuccessfully seeking a new trial, plaintiff has appealed to this court.

Appellant assigns as error the giving by the trial court of certain instructions on behalf of defendant. Respondent, while maintaining that no error was committed in the giving of instructions, insists that plaintiff was not entitled to a submission of her case to the jury under the pleadings and the evidence, and therefore that the trial court should have given the peremptory instruction in the nature of a demurrer to the evidence requested by the defendant at the close of all the evidence. In other words, respondent urges that the judgment *nisi* was for the right party and must be affirmed, regardless of error, if any, in the giving of instructions. As one of the reasons why its peremptory instruction should have been given, respondent insists that the deceased, Oscar Hoch, must be held to have assumed the risk of injury as a matter of law.

Appellant brings her action, and seeks a recovery herein, by virtue of the Federal Employers' Liability Act. Respondent does not contend here, nor did it contend below, that it was not engaged in interstate commerce or that deceased was not employed by defendant in such commerce at the time of his injury. It is apparently conceded by both parties that the action falls within the purview of the Federal act. Besides, there is ample evidence that both deceased and defendant railroad were engaged in interstate commerce at such time, for the evidence clearly shows that track 35 in defendant's yard was being used for the purpose of assembling cars to be moved to the yard of another railroad carrier in the State of Kansas and that deceased's employment required him to inspect and repair such cars, if necessary, before their removal from the State of Missouri to the foreign state of Kansas. Without question, plaintiff's action falls within the purview of the Federal Employers' Liability Act. [Young v. Lusk, 268 Mo. 625.]

The answer of defendant pleads that deceased assumed the risks of his employment. Section 4 of the Federal Employers' Liability Act (U. S. Comp. Stat., sec. 8660) provides: "In any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." In Young v. Lusk, 268 Mo. 625, a case falling within the purview of the Federal act and quite similar in its controlling facts to the case at bar, this division of our court, following the settled and established rule in this

State on the doctrine of assumption of risk, held that the employee never assumes the risk of the master's negligence, and that, while the servant assumes the usual and ordinary risks of his employment, to these risks cannot be added the negligence of the master. Consequently, we ruled in that case that a failure to warn an airbrake inspector, who was at his post of duty at the rear end of stationary cars, that other cars were about to be kicked or shunted against the stationary cars was negligence on the part of the railroad carrier and that the defense of assumption of risk was not available to the railroad carrier as a bar to plaintiff's action. Subsequently, in Williams v. Pryor, 272 Mo. 613, a case also falling within the purview of the Federal act and involving the use by a railroad employee of a patently defective tool, this court, en Banc, again held that the furnishing of such defective tool was negligence on the part of the master and that the servant did not assume the risk growing out of the master's negligence. Our opinion in the latter case, however, was reviewed by the Supreme Court of the United States on *certiorari*, and the Federal Supreme Court held that the Federal Employers' Liability Act prevails over any state law or rule with respect to the doctrine of assumption of risk and furthermore ruled that assumption of risk was a complete bar to plaintiff's action. [Pryor v. Williams, 254 U. S. 43.] The Federal Supreme Court has repeatedly ruled that, by virtue of Section 4 of the Federal Employers' Liability Act, the defense of assumption of risk, when interposed in an action falling within the purview of said act, is a bar to such action even though the master has been negligent, if it appears in such action that the negligence of the railroad carrier and the risks arising from such negligence were so obvious that an ordinarily prudent person under the circumstances in evidence would have observed and appreciated them, unless it further appears that the railroad carrier has violated a Federal statute enacted by Congress for the safety of the employee, thereby contributing to the injury or death of such employee. [Seaboard Air Line Railway v. Horton, 233 U. S. 492; Jacobs v. Southern Railway Co., 241 U. S. 229; Baugham v. Railroad, 241 U. S. 237; Boldt v. Pennsylvania Railroad Co., 245 U. S. 441; Southern Pacific Co. v. Berkshire, 254 U. S. 415.] It follows that the Federal rule, and not our state rule, respecting assumption of risk applies in the instant case. [Quigley v. Hines, 291 Mo. 23.] Therefore, it matters not in the instant case whether the defendant, or its employees, were negligent in failing to warn the deceased, Oscar Hoch, of the kicking or shunting of cars on switch-track 35, or whether the "blue-flag rule" was so generally disregarded and non-observed by deceased and other employees of defendant as to amount to a waiver of said rule by defendant, if, under the facts and

circumstances in evidence, deceased must be held to have assumed the risk as a matter of law.

It appears from the testimony of the witnesses of both plaintiff and defendant that, during the several years of deceased's employment as an inspector and repair man in defendant's railroad yard, it had never been the practice or custom of the switching crews to warn deceased, or other employees of defendant engaged in like duties, by bell, whistle or otherwise, of the kicking or shunting of cars onto the several switch-tracks in said yard. It also appears from the uncontroverted evidence that, at and prior to deceased's injury, it had never been customary for switching crews to keep a lookout for repair men or to sound any warnings for them or to give them any notice of switching movements, unless they were actually seen by some member of a switching crew in a place of peril. One of plaintiff's witnesses testified that the placing of a blue flag by car inspectors and repair men was the only protection that was provided for such employees and that was recognized by switching crews while working in the railroad yard. It further appears from the evidence to have been the practice and custom, during the period of deceased's employment, for switching crews in said yard to rely upon deceased and others engaged in like work to protect themselves from injury and to guard their own safety, either by the placing of a blue flag or by use of their senses of observation. No testimony was proffered by plaintiff tending to show that it was usual and customary for the switching crews in the railroad yard to give a warning or notice of any kind, either by bell, whistle or word of mouth, of switching movements or the shunting of cars upon the several switch-tracks. Deceased was an experienced railroad repair man and had been employed in the yard as an inspector and repair man for many years prior to his fatal injury. During the entire period of his service, there existed the risk of injury if he placed himself in a position of peril between or about standing cars in the yard without looking out for his own safety either by using his senses of observation or by placing a blue flag in accordance with the rule. The conclusion seems to us to be inevitable and irresistible, under the facts and circumstances in evidence in this case, that deceased, by reason of his many years of service in defendant's railroad yard, must have known and been thoroughly familiar with the practice and custom of the switching crews to switch and shunt cars over the various switch-tracks in the yard without the giving of any notice or warning of such switching movements and without the sounding of the engine bell or whistle. It seems equally clear to us under the evidence that the risk, even though it may be said to have been occasioned by the negligence of defendant, or its employees, arising from the failure of the switching crew to warn deceased of the movement of

the cars in question, was obvious to deceased and must have been fully known and appreciated by him. Under such circumstances, following the rule announced by the Federal courts, deceased must be held to have assumed the risk as a matter of law.

In Boldt v. Pennsylvania Railroad Co., 245 U. S. 441, 445, a case under the Federal Employers' Liability Act, the Federal Supreme Court said: "At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment or risks caused by the master's negligence which are obvious or fully known and appreciated by him. [Shearman & Redfield on Negligence (6 Ed.) sec. 208; Bailey, Personal Injuries (2 Ed.) sec. 385.] This general doctrine was clearly recognized in Gila Valley Ry. Co. v. Hall, 232 U. S. 101; Jacobs v. Southern Ry. Co., 241 U. S. 235; Chesapeake & Ohio Ry. Co. v. De Atley, 241 U. S. 313; and Erie R. R. Co. v. Purucker, 244 U. S. 324."

In Southern Pacific Co. v. Berkshire, 254 U. S. 418, an experienced locomotive engineer was struck on the head by the end of a mail crane, or by a mail sack placed upon the crane, while he was leaning out of the window of the engine cab, the injury resulting in his instant death. In an action brought by the administrator of deceased's estate to recover damages for his alleged wrongful death, it was held by the Federal Supreme Court that he assumed the risk as a matter of law. Said that court in the majority opinion, delivered by Mr. Justice HOLMES: "But further, we must take it, as we have said, that Linder (deceased engineer) perfectly well knew of the existence of the crane where it stood, and could have seen it from his seat had he looked, long before he reached it. He entered the employment of the railroad when it had this appliance manifest in its place. The only element of danger that he may not have appreciated was the precise distance which the point of the crane would reach. But an experienced railroad man cannot be supposed to have been ignorant that such a projection threatened danger and, knowing so much, he assumed the risk that obviously would attend taking the chances of leaning well out from the train. As we have said, the only possible inference on the uncontradicted evidence of the plaintiff's witnesses was that he leaned out considerably more than fourteen inches as shown by the position of his body and the place of the cut on his head. The probability is that the distance of the crane was somewhat greater than the minimum that we have assumed, but that we lay on one side. Confining ourselves to the case of postal cranes, we are of opinion that to allow the jury to find a verdict for the plaintiff was to allow them to substitute sympathy for evidence and to impose a standard of conduct that had no warrant in the common law. [Butler v. Frazee, 211 U. S. 465-467; Kenney v. Meddaugh, 118 Fed. 209.]"

The case of Gilmer v. Yazoo & Mississippi Valley Railroad Co., 4 Fed. (2nd Series) 963, 964, recently ruled by the United States Circuit Court of Appeals for the Fifth Circuit, bears close similarity to the case at bar. There an experienced railroad flagman was struck and killed in the nighttime while crossing the tracks in a switching yard of the defendant railroad. The car which struck deceased had neither a lookout nor light upon it to warn him of its approach, and plaintiff's action, which was brought under the Federal Employers' Liability Act, was based on the alleged negligence of the defendant railroad in switching cars in the railroad yard without having the yard or the cars properly lighted and without having a lookout upon the cars to warn deceased of danger. It was held that deceased assumed the risk as a matter of law. Said the Federal Court of Appeals in that case: "In the view we take of this case it is unnecessary to consider either whether the switching operations conducted in defendant's yards were carried on in such a way as to constitute negligence on the part of the railroad company, or whether plaintiff's intestate was guilty of such negligence as to bar recovery. Assuming, in favor of plaintiff, that defendant was negligent, and that her husband was not, we are of opinion that the doctrine of assumption of risk is fatal to a recovery in this case. Plaintiff's intestate was an experienced railroad employee, and the conclusion is inescapable that he was thoroughly familiar with the custom of the yard to switch cars without requiring them to be provided with a lookout, or to have lights upon them, so as to furnish warnings of danger. He was bound to know from his experience that the precautions against injury now insisted upon did not prevail in defendant's yard, and that it might be expected at any time, day or night, that a car would be moved without warning of any kind. The provision in Section 4 of the Employers' Liability Act (Comp. St., sec. 8660), to the effect that an employee shall not be held to assume the risks of his employment where the violation by the carrier of any statute enacted for the safety of employees contributes to the injury, refers to acts of Congress and not to acts of state legislatures. As there is no legislation by Congress prohibiting the switching of cars by the kicking or shunting process, the defense of assumption of risk in such case may still be made. The Supreme Court has held that Congress, by eliminating such defense in the particulars stated in Section 4 of the above-mentioned act, evidenced its intent that in all other cases assumption of risk should have its former effect of being a bar to a cause of action. [Seaboard Air Line v. Horton, 233 U. S. 492.] To the same effect is Jacobs v. Southern Railway Co., 241 U. S. 229. . . . In our opinion, it is clear from these decisions that plaintiff's intestate assumed the risk involved in the method used by defendant of switching cars without lights

or lookouts upon them to serve as warnings of danger to its employees." *Certiorari* was denied in the last cited case by the Supreme Court of the United States. [45 Sup. Ct. Rep. 639.]

This division of this court applied the Federal rule of assumption of risk in the case of Quigley v. Hines, 291 Mo. 23, 33, wherein an experienced railroad engineer was killed by a west-bound train while in the act of stepping upon a railroad track ordinarily used for eastbound trains. In that case, we said: "The Federal rule concerning assumption of risk applies in this case. [Pryor v. Williams, 254 U. S. 43.] For present purposes let it be assumed that it was the duty of respondent to prescribe rules requiring definite signals, other than danger signals, to be given to apprise employees using the approach that a train was running irregularly. There were no such rules. Quigley had been in service on these railroads for thirty-two years—twenty-five years as an engineer. It is beyond doubt that he knew there were no such rules and that he knew trains were run irregularly in various circumstances and in the very circumstances which existed at the time; for appellant argues he crossed the river on the freight train which then occupied the west-bound track on the bridge. There could be no doubt in the case about Quigley's appreciation of the danger if he knew the facts just stated as known to him. Under the Federal rule it 'is settled that the servant assumes extraordinary risks incident to his employment or risks caused by his master's negligence which are obvious or fully known and appreciated by him' (citing authorities). [Boldt v. Penn. R. R. Co., 245 U. S. 1. c. 445.] The trial court was right in ruling that appellant's evidence showed she had no cause of action."

Appellant, however, contends that the evidence herein tends to show that defendant had promulgated a rule known as Rule 30, which provided that "the bell must be rung when an engine is about to move," and that it was properly a question for the jury to determine whether or not this rule applied under the circumstances of the instant case. Ascribing to said rule the meaning and interpretation which appellant would have us give to the rule, namely, that the rule required the engine bell to be rung whenever the locomotive engine was moved in the operation of kicking or shunting cars in defendant's railroad yard, nevertheless the uncontradicted evidence in this case is to the effect that it was not the practice and custom in said yard, during the period of deceased's employment, for the engine bell to be rung in the performance of such switching operations. Deceased must have known that it was not customary for the switching crews to give a warning of such switching movements by bell or otherwise, as we have said, and he must also have known that the rule aforesaid, if applicable to such switching movements, was not generally or cus-

tomarily observed by the switching crews. At most, the non-observance of said rule was negligence on the part of defendant and its employees. Under the Federal rule, deceased assumed the risk notwithstanding the negligence of the defendant master, where it is clearly apparent, as here, that the risks caused by the master's negligence were obvious or fully known and appreciated by him. [Boldt v. Penn. R. R. Co., 245 U. S. 1. c. 445.]

Congress has enacted no law, so far as we know and are advised, providing for the giving of a warning of the movement of cars by the kicking or shunting process. Therefore, this case does not fall within the exception provided by Section 4 of the Federal Employers' Liability Act, and the defense of assumption of risk must be given the force and effect announced by the Federal decisions above cited, which is that it bars an action to recover for the employee's death.

It follows from what we have said herein that deceased must be held to have assumed the risk as a matter of law and that plaintiff is barred from a recovery herein. The trial court should have given defendant's peremptory instruction in the nature of a demurrer to the evidence. The verdict of the jury, however, being in favor of the defendant, a right result was attained. In our view of the case, it becomes unnecessary for us to discuss or rule the several errors assigned by appellant in the giving of defendant's instructions.

The judgment below must be affirmed, and it is so ordered. *Lindsay, C., concurs.*

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.