PEARL YORK, Administratrix of the Estate of GEORGE YORK, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—62 S. W. (2d) 475.

Division Two, June 24, 1933.*

*NOTE: Opinion filed at October Term, 1932, March 3, 1933; motion for rehearing filed; motion overruled April 20, 1933; motion to transfer to Court en Banc filed; motion overruled at May Term, June 24, 1933.

*E. T. Miller* and *Phil M. Donnelly* for appellant.

*Sizer & Gardner* for respondent.

WESTHUES, C.—This case comes to the writer on reassignment. George York, now deceased, filed this suit against appellant to re-

cover damages for personal injuries alleged to have been sustained by him on the 16th of March, 1928. He received a verdict and judgment in the sum of $12,000. Defendant appealed. York later died and the cause was revived in the name of respondent, the administratrix of his estate.

This action was brought under the provisions of the Federal Employers' Liability Act. York was a switchman employed by appellant in the Nineteenth Street Yards at Kansas City, Missouri. He worked nights in the capacity of what is known as a field switchman. At the time of his injury he was in the act of switching cars carrying interstate shipments. The Nineteenth Street Yards are made up of various tracks, switch stands and other equipment for the purpose of making up and breaking up trains.

The tracks in the immediate vicinity where York received his injuries consisted of main line tracks, two lead tracks that branched off the main line and a number of stub tracks connected with the lead tracks. Stub tracks numbers 30 to 36 inclusive connected with what was known as the new yard lead. This lead branched off the main line and extended in a northerly direction and the stub tracks 30 to 36 were located east of this lead and connected therewith. Immediately west of the new yard lead was track number 40, known as the ice dock lead. Stub tracks numbers 37, 38 and 40 were connected with and were located west of the ice dock lead. The switch stands controlling the various switches were located in the space between the two yard lead tracks. There is a sufficient decline so that cars, when shunted off the main line onto the lead tracks, will roll down the lead tracks onto the stub tracks.

On the night in question a train crew, with which York was working, was in the process of breaking up a freight train. York's duties were to line up the switches and set them for the stub tracks so as to permit cars to pass onto the tracks for which they were destined. Several switches had been made when a car was shunted onto the new yard lead track intended for stub track number 33. York, after ascertaining the track for which the car was intended, looked down the lead and noted that all switches were properly lined and then proceeded down the space between the two lead tracks toward the switch stand that controlled stub track number 33, for the purpose of opening the switch and letting the car pass onto track number 33. York testified that the car was approaching rapidly and he began to run, cocking his head towards his right shoulder in order that he might hear whether or not the car was gaining on him. As he was thus running he stumbled over the switch stand at track number 40, located between switch stands for tracks numbers 32 and 33. York fell with his feet toward the rail and the car passed over his left foot, mashing off the lower part thereof.

The petition charges that defendant was negligent in not maintaining lights on switch stands numbers 33 and 40. The answer of defendant specifically pleaded that the danger of plaintiff stumbling over switch stands was one of the risks incident to the employment and was assumed by plaintiff. It is also pleaded in the answer that the hazard was open, obvious, known and appreciated by plaintiff and therefore, plaintiff assumed the risk and was not entitled to recover for the injuries complained of.

At the close of all of the evidence defendant offered appropriate instructions in the nature of demurrers to the evidence on the theory that, under the evidence, plaintiff, as a matter of law, assumed the risk. The trial court refused to give these instructions. Plaintiff's instructions submitted the case to the jury on common-law negligence. Appellant assigns error on the part of the trial court in failing to sustain a demurer to the evidence.

■ It is rightly conceded by appellant and respondent that this case must be governed by the decisions of the Federal Courts. [45 U. S. C. A. sec. 51, note 16. Hoch v. St. Louis-San Francisco Ry. Co., 287 S. W. 1047, 315 Mo. 1199.]

The rule of assumption of risk is well stated in Gila Valley Ry. Co. v. Hall, 232 U. S. 1. c. 102, as follows:

"In order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances, would have appreciated it."

■ ■ Assuming then (without so deciding) that defendant was negligent in not maintaining lights on switch stands numbers 33 and 40, did York assume the risk of being injured in a manner as disclosed by the evidence? In determining this question we must view the evidence in its most favorable light to York. York was a switchman of many years' experience. He had been on night duty in the yard in the condition it was at the time of the injury for at least three years. During this time he had occasion to switch cars at the place he was injured three or four nights a week. The switch stands, beginning with number 32 north including 33 and 40 here in question, had never been equipped with lights. York testified that he knew this; that defendant had made some changes in the lights from time to time but that he had never seen a light on a switch stand north of track number 32. He further testified that just prior to being injured he looked down the lead and thought all switch stands had lights. York also testified that he knew that switch stand for track number 40 was between 31 and 33, but he was not certain whether it was between 31 and 32 or 32 and 33. He further testi-

fied that the tracks were not numbered; that he knew the switches and tracks from memory. It must be kept in mind that although switch, stand number 40 served a switch on the lead track west of stands numbers 32 and 33, it was located in the space between the two lead tracks. York had worked in this space three or four nights out of every week for at least three years, during which time no change whatever had been made in the yard at that place. Under these circumstances we are constrained to hold that the doctrine of assumption of risk applied as a matter of law and that the trial court erred in not sustaining a demurrer to the evidence. The following cases definitely settle this question. Hoch v. St. Louis-San Francisco Ry. Co., 287 S. W. l. c. 1050 (2), 315 Mo. 1199, and cases there cited; Doyle v. St. Louis Merchants' Bridge Terminal Ry. Co., 326 Mo. 425, 31 S. W. (2d) l. c. 1012 (8). In O'Donnell v. B. & O. Railroad Co., 324 Mo. 1097, 26 S. W. (2d) l. c. 933 (1-6), Division One of this court stated the rule thus:

"This rule is well settled by controlling decisions of the United States courts that under the Federal statute a servant assumes extraordinary risks incident to his employment or risks caused by the master's negligence which are obvious or fully known and appreciated by him. [Boldt v. Penna. Rd. Co., 245 U. S. 441, 445, 38 Sup. Ct. 139, 140, 62 L. Ed. 385, 389.] If the hazard would be plainly apparent to a reasonably prudent person in like situation the servant cannot be supposed to be ignorant of it. [So. Pac. Co. v. Berkshire, 254 U. S. 415, 418, 41 Sup. Ct. 162, 163, 65 L. Ed. 335, 337.]" [See, also, 39 C. J. 746, sec. 949.]

Respondent argues that defendant made a number of changes, from time to time, in the switch lights and for that reason the plaintiff, as he looked down the lead track, thought all of the stands had lights. However, plaintiff positively testified that switch stands for numbers 40 and 33 tracks never had lights on them. He could not point out where the changes in lights had been made. He claims that he was misled by the changes and that when he looked down the lead track he thought all the stands had lights. However, when plaintiff approached nearer the stands he could not help but see that they were minus lights. Plaintiff knew the stands were there. At the time he stumbled over stand number 40 he was running and had his head turned to the right listening to a car approaching. Stand number 40 was to the plaintiff's left. The only explanation that can be made is that plaintiff in a moment of forgetfulness ran against the switch stand and as a result was injured. This is a risk that plaintiff assumed.

Westover v. Wabash Ry. Co., 6 S. W. (2d) l. c. 847 (2), relied on by respondent, is authority against respondent. While in that case a judgment in plaintiff's favor was affirmed the facts are

110

not similar. Plaintiff, a switchman, was injured while riding on the steps of an engine. A high switch stand, which was considerably closer to the track than the standard distance, caused plaintiff to fall off the steps to his injury. It was there shown that the plaintiff did not have opportunity to observe that the stand was so near the track. On that theory the case was submitted to the jury. The nearness to the track of the switch stand was pointed out as being an unnecessary inherent defect, likely to cause persons riding on the engine steps to fall. Switch stands of the kind described in the case before us are just as necessary as the tracks to a complete railroad yard. Persons working in railroad yards, if not constantly on the lookout are likely to stumble over tracks and other necessary equipment. That is a risk assumed by the workmen. [Kirbo v. So. Ry. Co., 84 S. E. 491; 16 Ga. App. 49; Osborn v. Chicago, R. I. & P. Ry. Co., 1 S. W. (2d) (concurring opinion) l. c. 192, 193; 39 C. J. 726, sec. 933, and cases cited, supra.]

The conditions in the yard and the hazard of stumbling over switch stands were so obvious that knowledge thereof on plaintiff's part may be presumed. However, it is unnecessary to indulge in this presumption, as plaintiff's own evidence reveals that he had full knowledge of the situation.

The judgment of the trial court must be reversed. It is so ordered. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Ellison, P. J.,* and *Tipton, J.,* concur; *Leedy, J.,* not sitting.