GEORGE WATSON, RESPONDENT, v. ENERGY CONSTRUCTION COMPANY, APPELLANT.*

In the Springfield Court of Appeals. Opinion filed July 17, 1926.

1.—**Master and Servant—Negligence—Employer's Negligence Held for Jury.** Where, in hauling dead truck away from work, a rope was attached to dead truck and rear axle of another truck to pull it away, so that the trucks would be about fifteen feet apart when in motion, and remaining

fifty or sixty feet of the rope was thrown into the forward truck in a heap or coil, and rope became untied in course of the trip, and caught and injured leg of employee riding in forward truck, **held**, employer's negligence as to tying rope and throwing unused portion into forward truck was for jury.

2.—Same—Contributory Negligence—Employee's Contributory Negligence Held for Jury. Where, in hauling dead truck away from work, a rope was attached to dead truck and rear axle of another truck to pull it away, so that the trucks would be about fifteen feet apart when in motion, and remaining fifty or sixty feet of the rope was thrown into the forward truck in a heap or coil, and rope became untied in course of trip and caught and injured leg of employee riding in forward truck, **held**, employee's contributory negligence was for the jury.

3.—Same—Transporting Servants—Duty of Employer. Where contractor took employees to and from work by truck, employee returning from work was within scope of employment, and contractor was bound to exercise ordinary care to furnish reasonably safe transportation.

4.—Same—Furnishing Safe Place to Work—Duty of Employer—Extends Beyond Actual Situs of Work. Rule which casts upon master the duty to exercise ordinary care to furnish servant a reasonably safe place and premises for the performance of his work is not restricted to the identical situs of the labor, but extends to all places known by the master to be used, or which might by the use of ordinary care be known to be used by the servant.

5.—Same—Transporting Servants—Duty of Employer Non-delegable. Duty of employer to exercise ordinary care to furnish employee with reasonably safe means of transportation to and from work, where transportation is offered, is non-delegable.

6.—Same—Safe Place to Work—Safe Appliances—Duty of Employer Non-delegable. Master cannot delegate, sine onere, the duty he owes to the servant to exercise ordinary care to furnish a reasonably safe place in which to work and reasonably safe tools and appliances with which to work.

*Corpus Juris-Cyc References: Master and Servant, 39CJ, p. 273, n. 12; p. 322, n. 33; p. 348, n. 43; p. 349; n. 45 New; p. 1138, n. 73; p. 1194, n. 35.

Appeal from the Circuit Court of Butler County.—Hon. Charles L. Ferguson, Judge.

AFFIRMED.

*Henson & Woody* for appellant.

*Sam M. Phillips* for respondent.

BRADLEY, J.—This is an action for personal injury. The cause was tried before the court and a jury; plaintiff recovered and defendant appealed.

Defendant was engaged in road construction on highway No. 16 a few miles east of Poplar Bluff in Butler county, and plaintiff on the date of his injury was in defendant's employ and had been for about a month. Plaintiff drove a team, hauling machinery, dragging pipe line and pulling out dead trucks. Plaintiff resided in Poplar

Bluff and he, with other employees, rode out at morning and back at night in the trucks of defendant. About quitting time July 30, 1924, there was a dead truck to be pulled about a mile or possibly more to the place of repair. Plaintiff hitched his team to this truck, but was not able to move it. He put his team up, and while he was gone the dead truck was attached to another truck by means of an inch or inch and a half rope about seventy-five feet in length. One end of the rope was fastened to the dead truck and the rope was then placed around the rear axle of the forward truck and tied in a loop knot so that the rear or dead truck would be about twelve or fifteen feet from the front truck when the trucks were moving with the rope taut. The unused portion of the rope, some fifty or sixty feet in length, was thrown into the forward truck in a kind of heap or coil. Thus arranged for pulling the dead truck to the place of repair, nine or ten men, employees, including plaintiff, got into and stood in the bed of the forward truck to return to Poplar Bluff after the day's work. It had rained all or a good part of the afternoon and everything was wet, muddy and slippery. The road dump over which the trucks had to travel was muddy and cut with deep zigzag ruts and "chug holes." Marion Bristow, an employee and Joe Dodson, defendant's team and grader foreman, rode in the dead truck, and Bristow had the wheel and guided it. The trucks had traveled about a quarter of a mile when the loop knot on the axle of the forward or live truck came loose or untied. Thereupon the dead truck stopped and, the forward truck still going, the heap or coil of rope in the forward truck was drawn out and in so doing wrapped about plaintiff's left leg, jerked him down, and before the forward truck was stopped drew his foot or leg against the end of the truck bed causing a rather severe injury to his foot and ankle.

Plaintiff relied upon the alleged negligent manner in which the rope was attached to the forward truck and also the alleged negligent act in throwing the remainder of the rope into the bed of the forward truck where plaintiff with others would stand on the way back to Poplar Bluff.

Defendant answered by a general denial, a plea of contributory negligence and also set up the defense that the rope was attached to the trucks by a fellow servant for whose negligence, if any, defendant was not liable.

Defendant makes several formal assignments, but three only are considered in the brief and argument. These are (1) that the court erred in refusing defendant's request at the close of the case for a directed verdict; (2) that plaintiff's instruction No. 1 is erroneous and prejudicial; and (3) that plaintiff's instruction No. 1 is in conflict with defendant's instruction A.

The demurrer, it may be said, is based upon four propositions: (1) That there was no substantial evidence tending to show that the rope was negligently tied to the forword truck and the surplus thereof thrown in the bed of said truck where plaintiff and other employees were to stand on the way back from work; (2) that plaintiff was guilty of contributory negligence; (3) that plaintiff's day's work was ended when he was injured and that the relation of master and servant did not then exist; and (4) that the acts of negligence relied upon were acts of a fellow servant for which acts defendant would not be liable.

In view of the conditions obtaining we think that the alleged negligence respecting the manner in which the rope was tied and the surplus thereof thrown into the forward truck, and also the question of contributory negligence were, to say the least, questions for the jury, hence we shall pass to the other two propositions.

As stated defendant's employees assembled in the morning at its office in Poplar Bluff and rode out to the place of work in its trucks and rode back at night in the same manner. It was not definitely shown that defendant was to furnish transportation, but it had done so from the beginning. Whatever may be said as to an agreement to furnish transportation the fact remains that defendant undertook to furnish transportation, and having undertaken this service it was its duty to exercise ordinary care to furnish reasonably safe means of transportation. In view of the constant course of conduct on the part of the defendant in transporting its employees to and from their work it can hardly be contended with good reason that plaintiff was not at the time of his injury in the line of duty and within the scope of his employment, and that the relation of master and servant had not terminated. And such being true it was defendant's duty to exercise ordinary care to furnish him reasonably safe transportation. [St. Clair v. Railroad, 122 Mo. App. 519, 99 S. W. 775.] It is well established in the law of this State that the rule which casts upon the master the duty to exercise ordinary care to furnish the servant a reasonably safe place and premises for the performance of his work is not restricted to the identical *situs* of the labor, but extends to all places known by the master to be used, or which, might by the use of ordinary care be known to be used, by the servant. [Hake v. Buck's Stove & Range Co., 234 S. W. (Mo. App.) 1061.] Many cases might be cited to the same effect, but in view of such well known and established principle of law we do not deem it necessary to further continue the discussion. We rule that at the time of plaintiff's injury he was then within the scope of his employment and that the relation of master and servant then existed between him and the defendant.

We now reach the principal contention of defendant on the demurrer, viz., that the acts of negligence relied upon were the acts of a fellow servant for which acts defendant contends it is not responsible and not liable. There were two crews or gangs at work on this road construction work. One was known as the grading crew who used teams and scrapers and the other crew used the trucks in hauling gravel and cement from the mixer. Plaintiff worked in the grading crew and drove a team as stated. Joe Dodson was foreman of the grading crew and Lloyd Wilder was foreman of the truck crew. Dodson testified that he had nothing to do with the trucks, but plaintiff testified that Dodson, his foreman, directed him to pull the dead truck out with his team, which he attempted to do, but was not successful. Plaintiff also testified that when he put up his team and returned Dodson told him to get into the forward truck, Dodson was the only foreman present when the two trucks were tied together, but just who participated in tying the rope to the axle of the forward truck is not definitely shown. Marion Bristow, who worked in the grading crew and drove a team, as did plaintiff, was a witness for defendant and testified that he "tied the rope to the dead truck and helped tie it to the front truck," but was not able to say who else participated. He did say, however, that "the fellows that helped tie the rope were working on the job at the same class of labor that I was." Plaintiff endeavored to show that his foreman Dodson assisted or took part in tying the rope to the forward truck, but Dodson stated that he did not recall that he tied the trucks together. When the two trucks started from the place where they were tied together Bristow sat in the dead truck and guided or steered it, as above stated, and plaintiff's foreman Dodson sat in the dead truck beside Bristow. If Dodson did not actually take part in tying the trucks together it was done under his very nose and he sat for a quarter of a mile in a position where to look was to see the manner in which the rope was attached to the forward truck. And it cannot be said that he did not look unless it also be said that he deliberately determined not to look, and there is no grounds whatever to attribute such conduct to him. To the contrary Dodson was frank and fair and stated that he knew that "the rope was over in the front truck."

Regardless of the relative position with plaintiff of the employee or employees who tied the rope to the forward truck and threw the surplus in the bed of said truck such acts were, in law, the acts of the master and not that of a fellow servant. Defendant's duty to exercise ordinary care to furnish plaintiff reasonably safe means of transportation to and from his work was in the nature of the duty of an employer to exercise ordinary care to furnish a reasonably safe place to work and reasonably safe tools and appliances with which to work. The rules of law governing the latter mentioned duty also govern the

former.  It is familiar law that a master cannot delegate, *sine onere,* the duty he owes to the servant to exercise ordinary care to furnish a reasonably safe place in which to work and reasonably safe tools and appliances with which to work.

In State ex rel. Duvall v. Ellison et al., 283 Mo. 532, 223 S. W. 651, it was contended that the act of negligence complained of was the act of a fellow servant.  After disposing of the fellow-servant question the Supreme Court adopted the ruling of the Court of Appeals, 201 S. W. 605, wherein the following language appears: ''There is, however, another view of the case, which, if sound, renders the defendant liable, if the facts are believed by the jury, without regard to whether Blough was a fellow servant or not, and that has to do with the charge of negligence in failing to furnish plainiff's son with a reasonably safe place in which to work or in failing to keep it reasonably safe.  Such a duty is a primary duty, which is nondelegable.''  Many cases are cited in support which may be seen by reference to the reported opinion.  It is our conclusion that the demurrer was properly refused.

Plaintiff's instruction proceeded on the theory that defendant could not defeat recovery by showing that the rope was tied and thrown into the foreward truck by an employee or employees who, when at work on actual road construction, were fellow servants of plaintiff.  While the instruction might have been worded differently it submitted the correct theory.  Defendant's instruction A was to the effect that plaintiff could not recover if the jury found that plaintiff's injuries were caused solely by the negligence of a fellow servant.  Neither plaintiff nor defendant, at the time of the trial, it would seem, had a clear conception of the applicable law, but the result reached was eminently just, and there is nothing in the record which justifies the overturning of that result.

The judgment should be affirmed and it is so ordered.  *Cox, P. J.,* and *Bailey, J.,* concur.