Martin Woodward v. Missouri Pacific Railroad Company, Appellant.—295 S. W. 98.

Division One, April 11, 1927.

1. NEGLIGENCE: Evidence: Custom of Field Switchman to Notify Yard Clerk: Unpleaded. In an action for personal injuries received by a yard clerk who was on top of a refrigerator car, inspecting ice bunkers, when the car was struck by another switched on to the track, wherein plaintiff does not seek to recover on a custom but under the general rule, evidence that it was the custom of the field switchman to notify the plaintiff of the intended movement before a car was kicked in upon the track while he was making inspection of the refrigerator car, is competent, although the petition contained no allegation of such custom, and although it is conceded, without deciding, that the case falls within the section-hand rule. Under charges of negligence, and pleas of contributory negligence and assumption of risk, evidence of a custom of the field man to notify plaintiff before the kicking of a car in on the track while plaintiff was making an inspection of a car standing thereon, is admissible, as an evidentiary fact tending to show that he was not guilty of contributory negligence and that he did not assume the risk.

2. **HUMANITARIAN DOCTRINE: Demurrer to Evidence.** In this action by a yard clerk, whose duty it was to inspect refrigerator cars as they came into the switch yard and were set out on different tracks to be sent on to their destination, and who was injured while on top of a car inspecting the ice bunkers, holding a lantern in his hand, it being dark, the evidence is set out at length, and it is held that, under all the facts and circumstances, the evidence tending to show that the field switchman, whose custom it was to notify him when a car was about to be kicked in on the track and who stood within twenty feet of the refrigerator car, saw him in peril on top of the car, knew he was oblivious of the peril, and could have warned him that another car was about to be kicked in on the track in time to prevent the injury, is ample to sustain a verdict for plaintiff under the humanitarian doctrine.

3. **INSTRUCTION: Peril: Lookout: Changing Anticipate to Saw.** It was not error to modify defendant's instruction which told the jury that there was no duty upon the switching crew to "anticipate" that the inspector might be in a position of peril on top of the refrigerator car, by changing the word "anticipate" to "until they saw," where plaintiff's instruction required the jury to find that the field switchman "knew said car was being kicked down said track and saw plaintiff on top of said refrigator car and in the act of inspecting the same and in a position in which he would likely be hurt by the kicking of said car down said track and oblivious thereto."

---

Corpus Juris-Cyc. References: **Master and Servant,** 39 C. J., Section 1186, p. 964, n. 92; Section 1378, p. 1200, n. 51. **Negligence,** 29 Cyc., p. 622, n. 96. **Trial,** 38 Cyc., p. 1661, n. 56.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

Affirmed.

*Edward J. White, Thomas Hackney* and *Leslie A. Welch* for appellant.

(1) The court erred in admitting evidence on behalf of the plaintiff to the effect that it was the custom of the field switchman to notify the plaintiff of the intended movement before kicking a car on a track while he was making inspection of a refrigerator car thereon. The petition contained no averment of such a custom and without pleading the existence of such a custom the plaintiff should not have been permitted to introduce any evidence thereof. Kirkland v. Bixby, 282 Mo. 462. This evidence was palpably prejudicial to the defendant because, if such a custom was in force, it would necessarily require the field man to keep watch of the yard clerk and to see when and where he was making inspection of refrigerator cars. And this testimony had a direct and important bearing before the jury in the consideration of the plaintiff's first instruction predicated on the question of the field man's knowledge of plaintiff's peril and of his obliviousness thereto and the likelihood of injury in permitting the car to be kicked in on the track on which he was inspecting the

refrigerator car.  Bruce v. Mo. Pac. Railroad, 271 S. W. 762; Gabal v. Railroad, 251 Mo. 257; Degonia v. Railroad, 224 Mo. 564.   (2) The court erred in overruling defendant's demurrer to the evidence offered at the close of the evidence.  Gabal v. Railroad, 251 Mo. 257; Bruce v. Mo. Pac. Railroad Co., 271 S. W. 762; Degonia v. Railroad, 224 Mo. 564.   (3)  The court erred in giving plaintiff's Instruction 1, submitting the case to the jury under the humanitarian rule.  The testimony was wholly insufficient to authorize the submission of the case to the jury on this theory.

*Hogsett & Boyle* for respondent.

(1)  The court committed no error in admitting evidence to the effect that it was a custom of the switching crew to notify plaintiff before kicking a car in on a track while he was making an inspection of a refrigerator car thereon.   (a)  The answer pleads assumption of risk and likewise that plaintiff's injuries were caused by his own carelessness and negligence.  The evidence as to custom was clearly admissible on these allegations.  Erie Railroad Co. v. Purucker, 244 U. S. 321; C. & O. Railroad Co. v. DeAtley, 241 U. S. 310; C. & O. Railroad Co. v. Proffit, 214 U. S. 462; Osborne v. Wells, 211 S. W. 892; Lackey v. United Rys. Co., 231 S. W. 963; Rawie v. Railroad, 274 S. W. 1031; Swigart v. Lusk, 196 Mo. App. 473.  In this connection defendant's counsel both on cross-examination and from his own witnesses proved numerous customs and practices existing in regard to the manner of doing this work.   (b)  Evidence of custom was admissible without being pleaded as one of the evidentiary facts tending to show negligence.  Kinney v. Met. St. Ry. Co., 261 Mo. 97; State ex rel. Pelligreen Const. Co. v. Reynolds, 279 Mo. 493; St. Mary's Mill Co. v. Illinois Oil Co., 254 S. W. 738; Train v. Ry. Co., 253 S. W. 497; Foster v. Rys. Co., 235 S. W. 1070; Majors v. Rys. Co., 228 S. W. 518; Lightner v. Dunham, 195 S. W. 1057; Raber v. Rys. Co., 204 S. W. 740.  The so-called "section hand rule" does not apply to the facts of this case and the switching crew owed a duty to keep a lookout for the plaintiff while he was engaged in the inspection of a refrigerator car at night when on account of darkness he could not see the cars being kicked in on the various tracks, but when they could clearly see his lighted lantern on the car and when they set the car there for the express purpose of enabling him to inspect it.  This case is under the Federal Employer's Liability Act and the duty of defendant is to be determined by the rules of the common law, supplemented by that act as interpreted in the Federal decisions.  Pryor v. Williams, 254 U. S. 43; Brimer v. Davis, 245 S. W. 404.  Both under the Federal decisions and under the decisions of this State the switching crew owed a duty to keep a

lookout for the plaintiff. Brimer v. Davis, 245 S. W. 404; C. & O. Railroad Co. v. Proffit, 241 U. S. 462; Erie Railroad Co. v. Purucker, 244 U. S. 320; Hines v. Knehr, 266 Fed. 340; Erie Railroad Co. v. Healey, 226 Fed. 342; Tetwiler v. Railroad, 242 Mo. 178; Greenwell v. Ry. Co., 224 S. W. 407; Knippenbrock v. Wabash, 270 Mo. 479; Crecelius v. Railway Co., 284 Mo. 26; Brock v. Railway Co., 266 S. W. 698; Winkler v. Terminal Railroad Assn., 227 S. W. 625. The case was not submitted to the jury on the question of custom; the evidence was not offered to create a duty where otherwise none would exist, but was admissible as an evidentiary fact tending to show negligence. (2) The court did not err in overruling defendant's demurrer to the evidence offered at the close of the case. The undisputed evidence shows that Morris, the field man of the switching crew, who customarily warned plaintiff when making inspections of this character, gave the signal for this car to be kicked in on the track in question, and the case was submitted to the jury on the theory that Morris actually saw plaintiff in a position of peril on top of this car and oblivious to his peril in time to have warned him and negligently failed to do so. Such admission would be a proper one even under the strictest application of the so-called section hand rule. Degonia v. Railroad, 224 Mo. 565, 592; Gabal v. Railroad, 251 Mo. 257. The evidence shows that when plaintiff climbed this car to make this inspection with his lighted lantern on his arm Morris was standing only twenty feet south of the car facing the plaintiff with no obstructions between him and the plaintiff and nothing to prevent him from seeing the plaintiff, and there was ample evidence to justify the submission on this ground. Rine v. Railroad, 100 Mo. 228; Reyburn v. Railroad, 187 Mo. 565; Lynch v. Railroad, 208 Mo. 21.

GANTT, J.—This is a suit under the Federal Employers' Liability Act for damages for personal injuries sustained by the plaintiff while working as a yard clerk for the defendant in the yards located at the state line in Kansas City. Judgment was for plaintiff for $9800, and defendant has appealed.

Respondent alleged in the petition several grounds of negligence, but at the close of all the evidence amended the petition to conform to the proof by charging that the employees of appellant were negligent "in carelessly and negligently causing, suffering and permitting said car to be kicked in upon said track and in failing to warn respondent of said fact when they saw this respondent on top of said refrigerator car and in the act of inspecting the same and in a position of imminent danger and peril in which he would be likely to be hurt and injured by the kicking of said car in on said track and when they knew or by the exercise of ordinary care on their

part could reasonably have anticipated that respondent was oblivious to his peril and of the fact that said car was being kicked in upon said track."

The answer was a general denial with pleas of assumption of risk and contributory negligence. The reply was a general denial.

About three o'clock A. M. on the 28th of July, 1921, respondent was on top of a refrigerator car on switch track No. 24, inspecting the ice bunkers, when another car, consigned to the Fowler Packing Company, was switched onto the same track, striking two cars standing east of the refrigerator car, and they in turn struck the refrigerator car, and respondent was thereby hurled off the car to the ground and injured. The yard in question was an active switching yard, consisting of tracks numbered 19 to 41. Other facts will be noted.

We will approach a solution of the questions involved by conceding, without deciding, that the case falls within the general rule announced in the section-hand cases. The trial court so ruled. The respondent abandoned all grounds of negligence excepting the one covered by the amendment, and the case was submitted to the jury under the humanitarian rule, requiring the jury to find that the field man saw respondent on top of the car in peril and oblivious thereto; that the field man knew or by the exercise of ordinary care on his part could reasonably have anticipated that respondent did not know said car was being kicked onto said track—all in time thereafter by the exercise of ordinary care on the part of said field man to have warned respondent in time to have prevented injury; that the field man failed to so warn respondent; that said field man was thereby guilty of negligence; that respondent's injuries were directly caused by said negligence; and that respondent did not assume the risk as defined in other instructions.

I.    Assignment of error No. 1: "The court erred in admitting evidence on behalf of the plaintiff to the effect that it was the custom of the field switchman to notify the plaintiff of the intended movement before kicking a car on a track while he was making inspection of a refrigerator car thereon. The petition

**Custom.**

contained no averment of such a custom, and without pleading the existence of such a custom the plaintiff should not have been permitted to introduce any evidence thereof."

In support of this contention it directs our attention to Kirkland v. Bixby, 282 Mo. 462. In that case a section hand "was killed in a collision between the hand car upon which he was going to his work and one of defendant's trains." The defendant was charged with negligence in failing to ring the bell and sound the whistle while running through *the fog* to warn the crew of the hand car of the approach of the train. Plaintiff relied upon a local custom to ring

the bell and sound the whistle while passing through a fog. Under the general rule section men must look out for themselves. As against them the train crew has a clear track. We held that the plaintiff relying for a recovery on said custom should have pleaded the custom. In the instant case respondent did not seek a recovery on a custom. On the contrary, a recovery was sought under the general rule. Under the original charges of negligence in the petition and the pleas of contributory negligence and assumption of risk, a custom of the field man to notify respondent before kicking a car onto a track while respondent was making an inspection of a car was admissible in evidence. It was an evidentiary fact tending to show that the respondent was not guilty of contributory negligence, and that he did not assume the risk. [Kinney v. Met. St. Ry. Co., 261 Mo. 113; Osborne v. Wells, 211 S. W. 892; State ex rel. Pelligreen Const. Co. v. Reynolds, 279 Mo. 497, 498; Majors v. Kansas City Ry. Co., 228 S. W. 517.]

Appellant could have tendered an instruction limiting the effect of this evidence.


II.   Assignment of error No. 2: "The court erred in overruling the defendant's demurrer to the evidence offered at the close of the evidence."

The respondent at the time of his injury was working from 11 P. M until 7 A. M., and had been a yard clerk in this yard since the 11th of March, 1919. On the night in question twenty freight cars ar-

**Demurrer to Evidence.**

rived at Kansas City over the Omaha Division of the appellant and were set out of the train some distance from the yard. They were pushed from this place by the switch engine onto the middle track of this yard. In the "set out" were three cars consigned to the Fowler Packing Company, and a refrigerator car consigned to Swift & Company, at Sherman, Texas. Respondent received advanced information by telephone of the number of cars, the car initials, numbers, contents and the various destinations, whether for delivery to consignee or some other railroad for further transportation. On arrival he would get the way-bills, the conductor's list of the cars and would make out an interchange sheet and also make out cards to be tacked on the cars showing the destination and contents of each car. When he tacked the cards on the cars he would get the seal records and would then make the icing inspection of the refrigerator cars by climbing on top of the car and examining the bunkers. He would ordinarily wait until the switching crew had broken up the "set out" before inspecting the refrigerator cars.

While the respondent was at work in the yard office on the train sheets and cards, the switching crew was engaged in breaking up

316 Mo.—76.

the "set out" and assembling the cars of like destination on the same track. In doing so different tracks throughout the yard were used. The refrigerator car was the first car kicked onto track 24. Afterwards, two of the three cars of stock for Fowler Packing Company were kicked onto this track and were standing near the refrigerator car. Only one switch engine could work in this yard, and the switching crew consisted of the engineer and fireman; Kasberger, the foreman; Mizee, the "pin puller," and Morris, the field man. In switching the crew would kick cars from the east to the west onto the different tracks. Mizee worked near the engine and uncoupled the cars that they might be kicked onto the different tracks. Morris worked some distance from the engine. He lined up the switches that the car might be kicked onto the proper track, and would block the car or set the brake. He had a switch list which informed him of the destination of the cars, and he knew when and onto which track a car would be kicked. The foreman, Kasberger, worked between Mizee and Morris, and would relay signals from Morris to Mizee. Mizee and Kasberger testified as witnesses in the case, but did not know that respondent was in the yard or on the car. Kasberger saw a lighted lantern on top of the car and thought Morris was on top of the car setting the brake. He saw no other lighted lantern near the refrigerator car. Track 24 was customarily used for cars containing fruit, stock, perishable goods and cars that were to be moved quickly. Respondent was twenty or thirty minutes after the arrival of the "set out" in writing up the train sheet and making out the cards to be tacked on the cars. He then came out of the yard office and saw seven or eight cars of stock standing on the middle track, about fifty feet east of the yard office, with the engine coupled onto the east end of the cars. He proceeded west to track 24 and found on said track the refrigerator car and two cars of stock for the Fowler Packing Company standing a little east of and close to the refrigerator car. He inspected the cards on the Fowler cars, and as to what occurred thereafter he testified as follows:

"When I came out of the yard office I saw a member of the switching crew a little east of the engine, and I saw Morris, the field man, standing about twenty feet south or east of the refrigerator car, and there was nothing between him and the car. This crew brought this 'set out' into the yard and set the refrigerator car on track 24 to be inspected. Morris was facing me when I climbed onto the car at the east end of it. I had a lighted lantern on my right arm. I customarily carried a lantern. It was absolutely necessary at all times. After I got on the east end of the car I walked to the west end of the car and inspected both bunkers on the west end. I removed a lid under the running board, or where the switchmen walk on top of the car, and I pulled the plugs out of each bunker and

inspected it to see how much ice was in the bunkers. I then replaced the plugs and put the lid back over them. Then I walked to the east end of the car and pulled the lid of the bunker back, turned it over and got hold of the plug on the south side and was trying to pull it out when there was a crash and I was knocked off down between the cars. During the time I was on the car, inspecting the bunkers at the west end and while I walked to the east end, the field man, Morris, was standing over just about on middle track, and there was nothing between us at any time. Morris had been the field man of this switching crew for several months, and I had been working on this night shift up to this time. Neither Morris nor anyone gave me any warning that they were going to kick a car on that track. While I was on top of the car I could not see a car coming down this track. It was dark, and I did not see this car that knocked me off there and did not know that it was going to be kicked in on there. When cars were being kicked in on different tracks the field man was the farthest from the engine and he would be closer to the car that was being kicked or cut loose from the rest of them. He would be down in the field. On some tracks the field man would set the brakes on the cars; on other tracks he would put a chunk of wood under the wheel and block it in order to keep it from running back. I had been on top of the car at the time I was knocked off between four and five minutes. At the time I was knocked off I was facing north, I was facing—I don't think the track runs exactly east and west but I was facing this way (indicating) and my lantern was on my right arm.''

Cross-examination: ''I saw a man up there with a lantern. I don't think it would have been anyone else but a switchman. I could not recognize Morris by his face. I could see enough of him, his general outline and from the light of his own lantern, to recognize him. I couldn't tell whether he had a mustache or not, but I know it was Morris. I could tell from the size of him. He was a pretty good-sized man. I judge at least six feet. Morris was facing me. I couldn't see his features at all. I do not know whether or not any of them (the switchmen) saw me up there. I did not know there was a third Fowler car to come in on that track. I saw two Fowler cars standing in there east of the refrigerator car. I did not know that there was a third one to be kicked on that track. There is no set rule about Fowler Packing Company hogs had to be set on track 24. They were set on other tracks just the same as they were on track 24. Two of them had already been set on track 24, but the third could have been on some other track. It could have been on track 24. It did come in; it sure did come in there.''

Appellant insists that the verdict and judgment rest ''on conjecture, guess work and speculation.'' While respondent testified that

he did not know any of them (the switching crew) saw him on top of the car, he further testified that Morris was standing about twenty feet south or east of the refrigerator car facing him as he climbed onto the car with a lantern in his hand; that while he was on top of the car making the inspection Morris was standing near the middle track and still facing him and at no time was there anything between them to obstruct the view; that while he was in a stooping position, pulling out the plug in one of the bunkers, there was a crash and he was thrown from the car and fell between the cars; that he did not know a car was to be kicked onto that track and had no warning of such a movement; that it was dark and he could not see a car coming down the track. The foreman, Kasberger, who was quite a distance east of the refrigerator car, saw a lighted lantern on top of the car and thought Morris was on the car setting the brake. If Kasberger saw the lantern, it follows that Morris, who was near by and facing respondent, saw the lantern. Morris had "spotted" the car at this place for the sole purpose of inspection. He knew the yard clerk must soon make the inspection that the car might be taken on its way to Sherman, Texas. Morris did not testify as a witness in the case. He left the service of appellant four or five months before the trial and was residing in Illinois. His deposition had been taken in Kansas City by respondent while he was in the service of appellant, but he did not sign the deposition and it could not be used at the trial.

It is argued by appellant that respondent could have had the testimony of Morris by taking his deposition in Illinois. It follows that appellant could likewise have taken his deposition.

It is also argued that the respondent knew the other Fowler car was outstanding somewhere in the yards and that it must be switched onto track 24 before the cars were properly assembled, and the fact that Morris was standing there was notice to respondent that further switching would be done. Even so, it does not follow that respondent knew when the car would be kicked onto track 24.

Negligence and knowledge may be proved by facts and circumstances. When all the facts and circumstances in evidence are considered, we are of the opinion that there is ample evidence tending to show that the field man Morris saw the respondent in peril on top of the car; that he knew respondent was oblivious to peril, and that he could have warned respondent that the car was about to be kicked onto the track in time to have prevented the injury. [Rine v. C. & A. Ry. Co., 100 Mo. l. c. 235; Lynch v. Railroad, 208 Mo. l. c. 21.]

Appellant directs our attention to the following cases: Gabal v. Railroad, 251 Mo. 267; Bruce v. Railroad, 271 S. W. 762; DeGonia v. Railroad, 224 Mo. 564; Hammontree v. Payne, 296 Mo. 487. In

those cases an employee was injured while on the ground and on the tracks. We held that the humanitarian rule could not be invoked upon the mere seeing of a man in a dangerous position; that the switching crew could rely upon the presumption that the employee would protect himself until such time as they saw that he was actually oblivious to his danger and had no intent to avert it; that the switching crew knew that such employees frequently remain in a dangerous position until cars come very close to them and then by a step or two reach a place of safety. In this case the respondent was on top of a car; therefore, the switching crew could not rely upon the presumption that he would protect himself by taking a step or two to one side, for if he had done so he would have stepped off the car. The cases cited are not decisive under the facts of the instant case. [Hughes v. Railroad, 274 S. W. 1. c. 709.]

III. Assignment of error No. 3: "The court erred in modifying appellant's Instruction D-1 and in giving the same in a modified form."

Instruction D-1 as tendered is as follows: "The court instructs the jury that there was no duty upon any of the members of the defendant's switching crew to keep a lookout for the

**Instruction.** defendant's switching crew to keep a lookout for the plaintiff upon any of the tracks in question, and there was no duty upon any of said members *to anticipate* that said plaintiff might be on any car on any of said tracks in a position of peril and oblivious thereto."

The trial court modified the instruction by striking out the words *to anticipate* and substituting the words *until they saw* so that the instruction as given is as follows: "The court instructs the jury that there was no duty upon any of the members of the defendant's switching crew to keep a lookout for the plaintiff upon any of the tracks in question, and there was no duty upon any of said members *until they saw* that said plaintiff might be on any car on any of said tracks in a position of peril and oblivious thereto."

Appellant contends that the instruction assumed that the field man did actually see the respondent in a position of peril and knew that he was oblivious thereto. The instruction as given merely tells the jury that the members of the switching crew owed respondent no duty until they saw him in a position of peril and oblivious thereto. If the members of the switching crew did not see respondent in a position of peril and oblivious thereto, they owed him no duty. By respondent's Instruction 1 the court required the jury to find that "the field man knew said car was being kicked down said track and *saw* respondent on top of said refrigerator car and in the act of inspecting the same and in a position in which he would be likely to be hurt and injured by the kicking of said car down said track

and oblivious thereto. . . ." When the instructions are read together and with reference to each other, the jury could not have found in favor of respondent unless they found from the evidence that the field man saw respondent in a position of peril and that he was oblivious thereto. The case was submitted to the jury by instructions which clearly explained to them the issues.

It follows that the judgment should be affirmed. It is so ordered. All concur.