JAMES JENKINS, Administrator *de bonis non* of the Estate of WILBUR F. JENKINS, v. WABASH RAILWAY COMPANY, a Corporation, Appellant.—73 S. W. (2d) 1002.

Division One, July 17, 1934.

750

*S. J. Jones, Frank W. Ashby* and *Homer Hall* for appellant.

752

*Arch B. Davis, Dean H. Leopard, Prince & Beery* and *Hume & Raymond* for respondent.

754

ATWOOD, J.—This is an action for damages brought under the Federal Employers' Liability Act against the Wabash Railway Company and Arthur Lovell, its section foreman, on account of fatal injuries sustained by Wilbur F. Jenkins while in the company's employ as a section man under Lovell and while being transported from one place of work to another upon one of the company's gasoline motor cars operated by Lovell.

The petition was in two counts. The answer consisted of a general denial and pleas that decedent's injuries were directly caused by his own negligence and that he assumed the risk. At the close of plaintiff's evidence the defendants separately requested a peremptory instruction, in the nature of a demurrer to the evidence, upon each count. The court refused those requested by the railway company and gave those requested by Lovell. Thereupon defendant railway company offered no evidence but rested its case and prayed the court to instruct the jury that "under the pleadings and evidence the plaintiff is not entitled to recover under the first count of the petition and your verdict should be for defendant on said count." This instruction was refused. A similar instruction as to the second count of the petition was prayed by this defendant and refused by the court. On submission of the case the jury found for defendant on the second count and for plaintiff in the sum of $9000 on the first count. Judgment was rendered accordingly and from this judgment the railway company has appealed.

It is conceded that the case falls within the provisions of the Federal Employers' Liability Act, but counsel for appellant insist "that its demurrer to the evidence ought to have been given, for two reasons, first, because the plaintiff failed to allege or prove any negligence on the part of the defendant, and, second, because the deceased assumed the risk."

The sufficiency of plaintiff's petition was first challenged in appellant's reply brief. It is there said that plaintiff's original petition contained "no charge of negligence, except that the motor car 'did carelessly and negligently run into an open switch,' " and that plaintiff, therefore, failed to plead any negligence of defendants. This allegation, as fully set forth in the first count of plaintiff's original petition, was that "decedent had nothing to do at said time and place with the management and operation of said gasoline car; that while said gasoline motor car was being operated by defendants, the same did carelessly and negligently run into an open switch, which did cause said gasoline motor car to be instantly derailed, and to strike and run over deceased who had been thrown from his position on said motor car to the track bed by said violence, and did inflict on him serious and painful injuries, which resulted in his death later in the day."

Where, as in this instance, attack upon the petition is delayed until after verdict every reasonable intendment will be indulged in favor of the sufficiency of the petition to state a cause of action. [Woods v. Moffitt (Mo. App.), 38 S. W. (2d) 525, 528.] Appellant would have us construe the words "the same" in the above pleadings as referring to the motor car instead of the defendants. To do so in the light of the context would be to assign to plaintiff the ridiculous intention of charging the motor car, the inanimate instrumentality operated by defendants, with negligence. Though inartificially employed we construe the phrase to effectuate rather than destroy plaintiff's obvious intent to charge defendants with negligence in operating the motor car under the circumstances mentioned. This is in harmony with the provisions of Section 1099, Revised Statutes 1929.

Furthermore, at the close of plaintiff's evidence the court permitted him to amend his petition by inserting in the first count the words, "which had been by defendants carelessly and negligently left open," immediately after the above-quoted words "did carelessly and negligently run into an open switch." Defendants filed an affidavit of surprise and a motion for a continuance, which motion was by the court overruled. Appellant then filed an amended answer consisting of a general denial, pleas that decedent's injuries were the direct result of his own negligence and that he assumed the risk, and a specific denial that the switch was carelessly left open. It thus appears that two distinct charges of negligence were pleaded in the

amended petition upon which issue was squarely joined by defendant railway company's amended answer.

Counsel for appellant say that plaintiff failed to prove any negligence of the corporate defendant, and for that reason its requested peremptory instructions should have been given, because defendant Lovell's demurrer to the evidence was sustained and the assignment of negligence added by amendment was not submitted to the jury. These reasons do not convict the trial court of error in refusing the instructions. If there was any substantial evidence of negligence under the assignment brought in by amendment it is plain that the trial court committed no error in refusing defendant's requested peremptory instructions in the nature of demurrers to the evidence even though such assignment was not thereafter submitted to the jury, as counsel on both sides apparently agree was the case.

As for the trial court's action in giving defendant Lovell's peremptory instructions at the close of plaintiff's evidence, counsel for appellant do not claim that under the doctrine of *respondeat superior*, announced in McGinnis v. Railway Company, 200 Mo. 347, 98 S. W. 590, and other cases, such discharge of the foreman discharged his employer from liability for alleged negligence in the operation of the gasoline motor car. Indeed, whatever may have been the view that impelled the asking and giving of these peremptory instructions, the railway company is now in no position to claim discharge on that account from the negligence originally pleaded because immediately thereafter it asked and the court gave Instruction D-1 recognizing the jury's right to determine the question of defendant foreman's negligence in operating said car, as follows:

"You are instructed that the right of the plaintiff, if any, to recover in this case on the charge that the motor car was operated in a careless and negligent manner, depends upon whether the defendant's foreman was negligent. And unless you find from the evidence that the defendant's foreman was negligent in operating said car, there can be no recovery by the plaintiff on such charge of negligence and you should not find for the plaintiff on that ground, under either count of the petition."

In finally refusing defendant railway company's requested peremptory instructions the trial court necessarily ruled that there was substantial evidence for the jury supporting either the assignment of negligence in operating the gasoline motor car, or the assignment of negligence brought in by plaintiff's amendment, or both assignments. Was there any such evidence?

It appears from the record that the accident occurred at a switch east of Wakenda in Carroll County, Missouri. Appellant's main line ran east and west through Wakenda. North of this main line and east of the station was a passing track. This was over a quarter of a mile.

in length, and lay parallel with the main track except where it connected by switch with the main line at each end. There was a curve in the main line as the switch at the east end of this passing track was approached from the west. At the east end of the passing track was a standard switch and switch stand. This consisted of a target which was a piece of metal thirty or thirty-two inches long and eight inches wide. If the target was pointed east and west, or parallel with the main line track, it meant there was no danger on that track, but if the target was pointed north and south it meant there was danger on the main line. This target was located on a switch stand eight or ten feet high. When the target was turned crosswise with the main line, indicating danger, it could be seen for one-half mile to the west. The switch points could be seen four or five hundred feet.

On the day of the accident deceased was performing his regular duties as a section hand, working on the main line in and around Wakenda. About eleven-thirty A. M. he and other members of the crew were ordered by foreman Lovell to board the motor car, provided them by appellant, and go with him to a work train on the main line about a quarter of a mile east of the switch at the east end of the passing track for the purpose of loading ties and unloading some other materials. Defendant Lovell, who was appellant's section foreman in charge of this crew, gave these orders and boarded the motor car with his men. Three of the section crew sat on the north side of the car facing north. Deceased was one of this number and sat farthest east. Two more of the crew sat on the south side of the car facing south, while foreman Lovell sat at the southwest corner of the car operating it and facing east or the direction in which the motor car was going.

Immediately prior to this movement deceased and other members of the section crew had been working on appellant's main line west of the depot at Wakenda. The curve in the track east of the depot together with the depot building, prevented them from seeing the switch before they started on the journey which resulted in the accident. There was a flagman from the work train near the station at Wakenda which was about one-half mile west of the switch. Upon the orders of their foreman the crew loaded their car on the south passing track west of the station. They found the switch closed for this passing track and open for the main track. In order to get on the main track the crew lifted the car and set it over on the main track.

As trains approached on the main track that morning the work train was moved onto this north passing track and out again to work on the main track when it was cleared. About fifteen minutes before the motor car bearing the section crew reached this switch appellant's conductor in charge of the work train opened the switch to allow the

work train to move from the passing track to the main track after a train had just passed on the main track. After this movement was accomplished he left the switch open for the passing track and closed for the main track with the switch target pointing crosswise with the main track. He then proceeded east on the main track with the work train and was about 1200 feet east of the switch stand when the motor car reached it. No employee was left in charge of the switch and this conductor did not learn of the derailment until he went to Wakenda at noon. In this connection defendant railway company's published rule number 104 was offered and received in evidence, which rule is as follows:

"Switches must be left in proper position after having been used. Conductors are responsible for the position of the switches used by them and their trainmen, except where switch tenders are stationed, but, when practicable, the engineman must see that the switches nearest the engine are properly set.'

"A switch must not be left open for a following train unless in charge of a trainman of such train."

Counsel for appellant insist that "the court erred in admitting evidence relating to the leaving of the switch open and the Rule 104 relating thereto and in permitting the amendment of the petition setting up that new issue and in refusing to grant a continuance." The issue of defendants' negligence in leaving the switch open came into the case by plaintiff's amendment permitted at the close of his evidence. However, this issue was not submitted in the instructions given and it must be treated as abandoned. Hence, the admission of evidence offered in support thereof, allowance of the amendment and the refusal of defendant's application for a continuance, constituted at most only harmless error. [Ostertag v. Union Pacific Railroad Company, 261 Mo. 457, 479, 169 S. W. 1, 6; Kidd v. Railway Co., 310 Mo. 1, 44, 274 S. W. 1079, 1093.] Nevertheless, this evidence was admissible under the original petition as bearing upon the issues of deceased's negligence and assumption of risk. [Koonse v. Missouri Pacific Railroad Co., 322 Mo. 813, 18 S. W. (2d) 467, 472; Woodward v. Missouri Pacific Railroad Co., 316 Mo. 1196, 295 S. W. 98, 99.]

As the motor car proceeded eastward toward the work train it was going full speed. There was nothing to obstruct the view of the section foreman and his crew as they approached this switch. The work train was unloading ballast and slowly moving westward toward the approaching motor car. Witness Atherton, a member of the section crew riding on the motor car, testified that he did not see the switch target as they approached and was not aware that the switch was turned against them. He stated that if any of the crew had seen that the switch was open the motor car would have been stopped and lifted around the switch. He said: "We was looking at the work

train, and we run off of the open switch about 33 feet." The motor car could have been stopped in about half a rail length, or approximately sixteen feet.

After the motor car left the track, it bumped along over the ties and threw all the men off except the foreman. Deceased was thrown down between the tracks and seriously injured. Members of the crew carried him to a car in which he was taken to Wakenda. His condition became worse and he was taken to a hospital where he died in the early afternoon of the same day.

■ This action is based on the Federal Employers' Liability Act (U. S. Code Ann., Title 45, Chap. 2, Sec. 51) which renders a common carrier railroad liable for an employee's "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier," etc. As an employee being transported by the railroad in connection with his employment the deceased was entitled to the exercise of ordinary care by the officer, agent or employee of the railroad in charge of such transportation to render it reasonably safe. [St. Clair v. Ry. Co., 122 Mo. App. 519, 523, 99 S. W. 775; Watson v. Energy Const. Co., 220 Mo. App. 362, 365, 286 S. W. 715.] Such officer, agent or employee in this case was section foreman Lovell, and it was primarily his duty, as the corporate defendant's agent operating the car and in charge of the crew, to use ordinary care to furnish reasonably safe transportation. We think the evidence submitted made a case for the jury on the allegation of the foreman's negligence in operating the motor car as the proximate cause of the accident, and contributory negligence of the deceased would be no defense to liability under this act. [U. S. Code Ann., Title 45, Chap. 2, Sec. 53.] Therefore, the trial court did not err in refusing defendant's requested peremptory instructions, and it becomes unnecessary for us to determine whether or not substantial evidence was adduced in support of the assignment of negligence brought in by amendment but concededly not submitted.

■ Nevertheless, counsel for appellant say that even though it was negligent the danger was so open and obvious that respondent's decedent must be deemed to have assumed the risk, and for that reason its requested peremptory instructions should have been given. In proceedings under the Federal Employers' Liability Act, "wherever brought, the rights and obligations of the parties depend upon it and applicable principles of common law as interpreted and applied in the Federal Courts." [Chesapeake & Ohio Railway Co. v. Kuhn, 284 U. S. 44, 46, 47, and cases cited; Pryor v. Williams, 254 U. S. 43; Quigley v. Hines, 291 Mo. 23, 33, 235 S. W. 1050; Hoch v. Railway Co., 315 Mo. 1199, 1209, 287 S. W. 1047; York v. Railway Co., 333 Mo. 105, 62 S. W. (2d) 475, 477.] Stating the Federal doctrine of assumption of risk, the Supreme Court of the United States said in

Toledo, St. L. & Western Railroad Co. v. Allen, 276 U. S. 165, 169, that, except as specified in Section 4 of the Employers' Liability Act eliminating the defense in certain cases, "the employee assumes the ordinary risks of his employment, and, when obvious or fully known and appreciated by him, the extraordinary risks and those due to negligence of his employer and fellow employees." Likewise, in Boldt v. Pennsylvania Railroad Co., 245 U. S. 441, 445, "the rule is well settled that a servant assumes extraordinary risks incident to his employment or risks caused by the master's negligence which are obvious or fully known and appreciated by him." Also, in Chesapeake & Ohio Railroad Co. v. Proffitt, 241 U. S. 462, it is said that the employee "is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it."

In Seaboard Air Line Railway v. Horton, 233 U. S. 492, 503, 504, importance of preserving the distinction between contributory negligence and assumption of risk is suggested and the difference explained. Since ordinarily it is an employee's "duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee." In Gila Valley, G. & N. Railway Co. v. Hall, 232 U. S. 94, 101, 102, it is said that "the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place to work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it." Again, touching the duty of an employee, it is said in Chesapeake & Ohio Ry. Co. v. DeAtley, 241 U. S. 310, 314, 315, 316:

"It is insisted that the true test is not whether the employee did, in fact, know the speed of the train and appreciate the danger, but whether he ought to have known and comprehended; whether, in effect, he ought to have anticipated and taken precautions to discover the danger. This is inconsistent with the rule repeatedly laid down and uniformly adhered to by this court. According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until,

notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them.''

A careful study of the record in this case fails to disclose any evidence whatever that decedent actually knew that the switch was open. Neither can we say as a matter of law, in the light of the Federal rule on assumption of risk, that he appreciated the danger or that it was so plainly observable that he must be presumed to have known it. The railway company's Rule 104 contained the following requirement: ''A switch must not be left open for a following train unless in charge of a trainman of such train.'' The conductor of the work train testified that earlier that morning he had left a flagman at the station about a half mile west of this switch to protect his crew from trains coming from that direction. The evidence is far from conclusive that decedent either saw him or knew of his presence there. Moreover, this flagman was obviously not in charge of this switch because the evidence shows that it was being operated by the conductor of the work train and there was no evidence that the flagman at the station even knew that this switch was open when some of the crew observed him approaching them from the east as they started for the work train from their place of work west of the depot. He was then a half mile or more west of the switch in question and was apparently in charge of the switches leading from the main track to the south passing track. If, as counsel for appellant contend, the decedent by reason of his long service there was familiar with the location of the switches and the rules and customs governing their operation and care, absence of a trainman in charge of the switch at the east end of the north passing track together with the switch condition encountered by the crew in going from the south passing track onto the main track would tend to allay any apprehension that deceased might otherwise have had of the existence of an open switch ahead blocking the main line. It appears that the conductor who actually had charge of opening and closing this switch never saw the motor car and did not learn of its derailment until his return to the station about noon, although he admitted that he left the switch open when, just prior to this accident, the work train was pulled from the north passing track onto the main line after another train had passed over the main line. In this situation deceased's attention was apparently fixed on the danger attending the approach of the work train. He had a right to rely upon the exercise of ordinary care on the part of the foreman, who was operating the motor car and facing the switch target, to discover and act upon this signal of danger in time to avoid derailment. It was for the jury to say whether or not he assumed the risk.

 It is also urged that the court erred in refusing to give defendant railway's requested Instructions D-16, D-19 and D-22. The latter was a peremptory instruction in the nature of a demurrer to the evidence, refusal of which we have just ruled was not error. Instruction D-16, tendering defendant's theory on assumption of risk, was properly refused because it required of decedent the exercise of ordinary care to see and discover that the switch here in question was not set for the main line track. The risk of derailment from an open switch was an extraordinary risk, not a usual and necessary incident of the employment. If it was caused by the foreman's failure to exercise ordinary care in operating the motor car then the risk was due to defendant's negligence, and an employee is not bound to exercise even ordinary care to discover risks caused by the employer's negligence. [Choctaw, Oklahoma & Gulf Railroad Co. v. McDade, 191 U. S. 64, 67, 68; Gila Valley, G. & N. Railway Co. v. Hall, 232 U. S. 94, 101, 102; Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U. S. 462, 468; Chesapeake & Ohio Ry. Co. v. DeAtley, 241 U. S. 310, 314, 315, 316; Western Coal & Mining Co.. v. McCallum, 237 Fed. 1003, 1008; Owl Creek Coal Co. v. Goleb, 232 Fed. 445, 447.] Defendant's requested Instruction D-19 would have authorized a verdict for defendant if the jury believed that decedent's injuries resulted from risks that were ordinarily incident to his employment. This would have been misleading and confusing because it ignored plaintiff's evidence and theory of the case that such injuries resulted from an extraordinary risk due to negligence of the employer. Such risks are not assumed unless known and appreciated by the employee. The instruction was properly refused.

 Counsel for appellant also say that Instruction P-1, given at plaintiff's request, is erroneous in that the jury was thereby instructed to find for plaintiff if they found, among other things, "that plaintiff's decedent did not knowingly assume the risk of said conduct of the defendant, and of the fact that said switch was closed," etc. The specific complaint is that the word "knowingly" so narrows what has been judicially declared to be the Federal rule on the assumption of risk that the instruction was prejudicially erroneous.

As we understand the Federal decisions the employee's knowledge and realization of extraordinary risks caused by the master's negligence must appear before it can be said that the employee has assumed such risks. In Choctaw, Oklahoma & Gulf Railroad Co. v. McDade, 191 U. S. 64, 67, 68, speaking through Mr. Justice DAY the court said that the true test is "whether the defect is known or plainly observable by the employee." In Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 63, Mr. Justice WHITE, announcing the opinion of the court said: "It was for the jury to determine, from a consideration of all the facts and circumstances in evidence, whether

plaintiff had actual knowledge of the danger." In Railway Co. v. Thompson, 236 Fed. 1, 11, the United States Circuit Court of Appeals for the Sixth Circuit cites with approval other Federal decisions holding that "the only kind of knowledge which, on the ground of assumption of risk, will bar a recovery is actual knowledge," and that the assumption called for by the defense of assumption of risk is a "conscious assumption." Other decisions amplify the thought substantially in accord with our opinion in Martin v. Wabash Railway Co., 30 S. W. (2d) 735, 325 Mo. 1107, cited by appellant, wherein we said that the employee assumes "the extraordinary risks caused by the employer's negligence which are obvious and fully known to the employee and appreciated by him, or so plainly observable that he must be presumed to know them." The latter clause simply means that such knowledge may be shown by circumstantial evidence, and this is generally regarded as the law whenever proof of knowledge is required or the word "knowingly" is used. [Alcorn v. Railway Co., 108 Mo. 81, 93, 18 S. W. 188; White v. Poole, 272 S. W. 1021, 1027, 1028, 220 Mo. App. 973; Speer v. Burlingame, 61 Mo. App. 75, 87; American Express Co. v. Commonwealth, 171 Ky. 1, 186 S. W. 887, 890; Brooks v. State, 74 Ark. 58; State v. McCormick, 56 Wash. 469; State v. Constantine, 43 Wash. 102; Morey v. Milliken, 86 Me. 464; West v. Wright, 98 Ind. 335, 339; Verona Cent. Cheese Factory v. Murtaugh (N. Y.), 4 Lans. 17, 22.] It does not appear that use of the word "knowingly" narrowed the doctrine. If defendant wanted the jury more comprehensively instructed it should have presented such a request in proper form. Having failed to do so, appellant is in no position to complain of the instruction given.

Counsel for appellant also say: "Next of kin dependent upon the employee are not entitled to damages if there is a surviving parent, and as the mother of the deceased employee survived, the brother of the deceased is not entitled to damages and the court erred in admitting evidence and argument in support of his claim, and in giving plaintiff's instructions P-1 and P-2." Recovery by both mother and brother was permissible under these instructions. As Section 1 of the Federal Employers' Liability Act, U. S. C., Title 45, Chapter 2, Section 51, has been construed in Chicago, Burlington & Quincy Railroad Co. v. Wells-Dickey Trust Co., 275 U. S. 161, and Taylor v. Taylor, 232 U. S. 363, the mother alone was entitled to sue, and submission of the brother's claim in these instructions and the admission of evidence and argument in support thereof was reversible error if properly raised and presented. The only question is whether this assignment of error is properly before us for consideration.

Counsel for appellant say that certain objections made and exceptions saved and preserved as to plaintiff's evidence were sufficient to bring this matter up for review. Counsel for respondent insist that

such objections were too general to be effective and that even if sufficiently specific they were waived.

This brother, called as a witness in his own behalf, after testifying that the deceased's earnings averaged ninety dollars a month, was asked this question by his counsel: "And what benefits, if any, did you get from his earnings?" Defendant's counsel immediately objected upon several grounds, one of which was, "that this witness is not entitled, under any circumstances, to recover directly or indirectly as a beneficiary." It being conceded that the proceeding was under the Employers' Liability Act and it having been pleaded and proved that the mother was living and a beneficiary under the death claim, we think this objection was sufficiently specific to advise the court of the incompetency of proof of support rendered this brother. The objection was overruled and the witness was permitted to answer. Further testimony along the same line was duly objected to on the same ground and proper exceptions were saved, and in defendant's motion for a new trial one of the reasons assigned was, "Because the court erred in admitting illegal, incompetent and prejudicial evidence offered by the plaintiff."

Counsel for respondent say that these objections were waived because defendant's instructions D-9 and D-12, given at defendant's request, adopted by reference plaintiff's measure of damages Instruction P-2. Instructions D-9 and D-12 were the usual cautionary instructions in effect admonishing the jury that the instructions read by the attorneys in the case were the instructions of the court and that the jury should be controlled and governed solely by the evidence and the law as declared in the instructions of the court. They contained no such specific sanction or adoption by reference of other instructions as appears in the cases cited on this point. Defendant duly objected and excepted to the giving of plaintiff's requested Instruction P-2. This contention of respondent is overruled.

It is next urged that the claim for damages on behalf of this brother, James Jenkins, appeared on the face of the petition, and by joining issue without challenging this allegation by demurrer, motion or answer, the defendant waived its right to complain of a recovery under such allegation. The point might be well taken if appellant were standing on an objection to the introduction of any evidence under a petition which did not wholly fail to state a cause of action, as in the cited case of Fisher v. St. Louis Transit Co., 198 Mo. 562, 95 S. W. 917. No such general objection is relied on in the instant case. In Jackson v. Johnson, 248 Mo. 680, 154 S. W. 759, also cited by respondent, it appears that no objection to the introduction of evidence was ever made. Other cases cited by respondent are likewise distinguishable. Also, the objection here urged by appellant is

obviously not grounded on misjoinder of issue or like matters covered by Section 1099, Revised Statutes 1929, as suggested by respondent.

Counsel for respondent also insist that defendant has shifted its position in now urging that James Jenkins is not entitled to recover because his mother, representing a preferred class, is living and takes to the exclusion of others. Unfortunately for the aged mother counsel for plaintiff utterly ignored the well-established Federal rule previously announced on this subject, and injected reversible error in the case which is beyond our power to cure. The objections, which we hold were sufficiently made and preserved by defendant's counsel as to this incompetent evidence, demonstrate that defendant's theory was contrary to plaintiff's theory on this feature of the case, and defendant has not shifted its position on appeal.

For the reasons above stated the cause is reversed and remanded for a new trial. All concur.